845 A.2d 674 (2004)
368 N.J. Super. 159
STATE of New Jersey, Plaintiff-Respondent,
v.
William T. EVERS, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued March 10, 2004.
Decided April 5, 2004.
*675 Paul J. Jackson, Nutley, argued the cause for appellant.
Gary A. Thomas, Special Deputy Attorney General, argued the cause for respondent (Paula T. Dow, Assistant Attorney General, Acting Essex County Prosecutor, attorney; Mr. Thomas, on the brief).
Before Judges KESTIN, AXELRAD and LARIO.
The opinion of the court was delivered by LARIO, J.A.D.
Defendant William Evers appeals from the modification of his sentence to comport with the Supreme Court's decision and remand order in the same case, State v. Evers, 175 N.J. 355, 815 A.2d 432 (2003). Again, this court confronts important issues pertinent to New Jersey sentencing procedure.

*676 I
The factual and procedural history is recited at length in the Supreme Court's opinion. Id. at 364-367, 815 A.2d 432. We need only recount that history as relevant to our present disposition. On February 9, 2000 defendant was charged with one count of second-degree endangering the welfare of a child, pursuant to N.J.S.A. 2C:24-4b(4)(a) (currently N.J.S.A. 2C:24-4b(5)(a)) (distribution of child pornography), and forty-three counts of fourth-degree endangering the welfare of a child, pursuant to N.J.S.A. 2C:24-4b(4)(b) (currently N.J.S.A. 2C:24-4b(5)(b)) (possession of child pornography). After three endangering counts were dismissed on the State's motion, defendant, on October 30, 2000, entered a conditional guilty plea to one count of distribution of child pornography and to forty counts of possession of child pornography.
At sentencing, on March 16, 2001, the judge downgraded the second-degree distribution offense to the third-degree sentencing range, in accordance with N.J.S.A. 2C:44-1f(2). Critically, the judge also found defendant had overcome the presumption of incarceration that normally attaches to first- and second-degree offenses. The judge found defendant had made a threshold showing, as N.J.S.A. 2C:44-1d required, that his incarceration would amount to a "serious injustice," overriding "the need to deter such criminal conduct by others." Defendant was sentenced to five years' probation conditioned upon the service of 364 days in the Essex County jail. The custodial aspect of the sentence was stayed for six months. The sentences on the forty possession counts were run concurrently with each other and with the distribution count.
Defendant appealed from the convictions; and the State appealed from the sentence, arguing that the presumption of incarceration for the second-degree crime had not been overcome. In an unpublished opinion, we affirmed the convictions and the sentence. Judge Steinberg, dissenting from the disposition of the sentencing issue, believed the presumption of incarceration had not been rebutted. The State appealed to the Supreme Court as of right with regard to the sentencing issue, R. 2:2-1(a)(2), and defendant's petition for certification regarding the convictions was granted on a limited basis. The Supreme Court affirmed the convictions but, agreeing with Judge Steinberg, it remanded for resentencing. Justice Albin, writing for the Court, explained:
Defendant seeks to overcome the presumption of imprisonment that applies to his conviction of a second-degree crime, so we look to the relevant statute and case law to determine whether he has met his burden. The Code provides that a sentencing court

shall deal with a person who has been convicted of a crime of the first or second degree by imposing a sentence of imprisonment unless, having regard to the character and condition of the defendant, it is of the opinion that his imprisonment would be a serious injustice which overrides the need to deter such conduct by others.

[N.J.S.A. 2C:44-1d.]
Absent a proper finding of "serious injustice" that outweighs the need for general deterrence, a trial court must impose a custodial sentence, [State v. Roth, 95 N.J. 334, 358-59, 471 A.2d 370 (1984) ], unless the defendant has been found eligible for an alternative sentence specifically authorized by the Code, State v. Soricelli, 156 N.J. 525, 537-38, 722 A.2d 95 (1999). The presumption of imprisonment is not dispelled merely because the trial court is clearly convinced that the mitigating factors substantially *677 outweigh the aggravating factors and the interests of justice justify downgrading a first- or second-degree offense pursuant to N.J.S.A. 2C:44-1f(2). [State v. Jabbour, 118 N.J. 1, 7, 570 A.2d 391 (1990) ]. In that event, the trial court must nevertheless impose a term of imprisonment within the downgraded sentencing range because the presumption of imprisonment is determined "not by the sentence imposed, but by the offense for which a defendant is convicted," State v. O'Connor, 105 N.J. 399, 404-05, 522 A.2d 423 (1987).
[Evers, supra, 175 N.J. at 388, 815 A.2d 432.]
The Court noted that in determining whether imprisonment would effect a "serious injustice" upon defendant, the New Jersey Criminal Code left "a residuum of power in the sentencing court not to imprison in those few cases where it would be entirely inappropriate to do so." Id. at 389, 815 A.2d 432 (citing Roth, supra, 95 N.J. at 358, 471 A.2d 370). The Court observed how it has "consistently held that this residuum of power may be legitimately exercised in those `truly extraordinary and unanticipated' cases where the `human cost' of punishing a particular defendant to deter others from committing his offense would be `too great.'" Ibid. (citing State v. Rivera, 124 N.J. 122, 125, 590 A.2d 238 (1991); Roth, supra, 95 N.J. at 358, 471 A.2d 370).
The Court recounted only two cases where the presumption of incarceration was overcome. Id. at 389-390, 815 A.2d 432 (citing State v. Jarbath, 114 N.J. 394, 555 A.2d 559 (1989) (where defendant, who suffered from severe mental illness and caused the death of her infant son by dropping him on a coffee table, had demonstrated a character and condition so idiosyncratic that the deterrence purposes of extended incarceration would not be served); and State v. E.R., 273 N.J.Super. 262, 265, 269, 273-74, 641 A.2d 1072 (App.Div.1994) (affirming resentencing of defendant with full-blown AIDS from seven-year-custodial to five-year-probationary term in light of the defendant's undisputed physical incapacity and imminent death within six months)). The Court also cited a panoply of cases where it had ruled the presumption was not overcome. Id. at 390-392, 815 A.2d 432 (citing Jabbour, supra, 118 N.J. at 3-4, 8-9, 570 A.2d 391; State v. Johnson, 118 N.J. 10, 14-20, 570 A.2d 395 (1990); State v. Kelly, 97 N.J. 178, 188, 219-220, 478 A.2d 364 (1984); Roth, supra, 95 N.J. at 340-41, 366-69, 471 A.2d 370; Soricelli, supra, 156 N.J. at 526, 528-32, 537-40, 722 A.2d 95; Rivera, supra, 124 N.J. at 123-27, 590 A.2d 238; O'Connor, supra, 105 N.J. at 402, 405-408, 410-411, 522 A.2d 423; State v. Hodge, 95 N.J. 369, 371-372, 378-80, 471 A.2d 389 (1984)). Its review of these cases
suggests the heavy burden borne by a defendant who seeks to overcome the presumption of imprisonment. The common thread running through each is the focus on the gravity of the offense, which implicates the need for specific and general deterrence. In none of these cases was the defendant able to show that his character and condition were so unique or extraordinary, when compared to the class of defendants facing similar terms of incarceration, that he was entitled to relief from the presumption of imprisonment.

[Id. at 392, 815 A.2d 432.]
Recognizing the need of the trial courts for guideposts to signal when a defendant presents "the extraordinary or extremely unusual case where the human cost of imprisoning a defendant for the sake of deterrence constitutes a serious injustice," the Court declared:

*678 In deciding whether the "character and condition" of a defendant meets the "serious injustice" standard, a trial court should determine whether there is clear and convincing evidence that there are relevant mitigating factors present to an extraordinary degree and, if so, whether cumulatively, they so greatly exceed any aggravating factors that imprisonment would constitute a serious injustice overriding the need for deterrence. We do not suggest that every mitigating factor will bear the same relevance and weight in assessing the character and condition of the defendant; it is the quality of the factor or factors and their uniqueness in the particular setting that matters.
[Id. at 393-394, 815 A.2d 432 (referencing mitigating factors set forth at N.J.S.A. 2C:44-1b).]
The Court proceeded to apply these principles to defendant's case. The Court observed that, at sentencing, the judge found two aggravating factors: the risk defendant would commit another crime, N.J.S.A. 2C:44-1a(3), and the need to deter him and others from violating the law, N.J.S.A. 2C:44-1a(9). Id. at 395, 815 A.2d 432. The judge found four mitigating factors: defendant did not contemplate his conduct would cause or threaten serious harm, N.J.S.A. 2C:44-1b(2); defendant had no history of prior criminal conduct, N.J.S.A. 2C:44-1b(7); defendant was particularly likely to respond affirmatively to probationary treatment, N.J.S.A. 2C:44-1b(10); and, defendant willingly cooperated with law enforcement authorities by giving a complete statement to the police and not contesting the facts of his case, N.J.S.A. 2C:44-1b(12). Ibid. The Court determined these factors were supported by sufficient credible evidence in the record. Id. at 397, 815 A.2d 432.
The Court then addressed the remaining question "whether the trial judge properly exercised her discretion within the `residuum of power' permitted by N.J.S.A. 2C:44-1d by imposing a probationary sentence." Ibid. The Court found several factors the trial judge relied upon either unsupported in the record or not "so extraordinary as to dispel the presumption of imprisonment." Ibid. The Court deemed unsupported the findings that defendant had entered a particular chat room for child pornography by accident, and that defendant had voluntarily entered long-term psychological treatment. Id. at 397-398, 815 A.2d 432. The Court found irrelevant the State's initial plea agreement offer, and found unextraordinary that defendant "did not commit more serious crimes such as creating or manufacturing child pornography, attempting to interact with children on the Internet, or sexually gratifying himself in front of children," since these were irrelevant to the knowing distribution of child pornography. Id. at 398-399, 815 A.2d 432.
The Court was also not persuaded that the defendant lacked appreciation for the activity's criminal nature. Id. at 399, 815 A.2d 432. The Court believed Evers's conduct "was exactly the type of trafficking the Legislature meant to shut down," and that defendant's status as an "esteemed member of the community" was not so extraordinary that his imprisonment would effect a serious injustice. Id. at 399-400, 815 A.2d 432. Justice Albin added that the judge's estimation that the offense of child pornography distribution had been improperly graded by the Legislature has absolutely no bearing on the appropriate punishment for defendant's distribution crime. Ibid. (quoting Soricelli, supra, 156 N.J. at 538, 722 A.2d 95 (quoting State v. Cannon, 128 N.J. 546, 559-60, 608 A.2d 341 (1992))). The Court remanded the case to the Law Division for resentencing *679 consistent with its opinion. Id. at 401, 815 A.2d 432.
Defendant was resentenced on May 19, 2003. The judge sentenced defendant to a custodial term of three years on the distribution count and concurrent custodial sentences of twelve months on the remaining endangering counts. The sentences were not subject to Megan's Law. Defendant did not receive any jail credit for probationary time served in the interim period since his prior sentencing. The new sentence did not affect the change in the assessments and penalties previously imposed.

II
Defendant appeals the sentence the judge issued at the May 19, 2003 remand proceeding. He raises the following points:

POINT I: THE STATE FAILED TO MOVE FOR A STAY OF SENTENCE IN THE TRIAL COURT, EITHER PENDING OR AFTER THE FILING OF ITS NOTICE OF APPEAL. BECAUSE THE DEFENDANT SERVED HIS SENTENCE FOR FORTY-SEVEN DAYS BEFORE A HEARING UNDER R. 2:9-3(d) WAS HELD, DOUBLE JEOPARDY PRINCIPLES BAR THE IMPOSITION OF A CUSTODIAL TERM AT THIS TIME.

POINT II: EITHER AS A MATTER OF LAW OR AS A MATTER OF DISCRETIONARY FAIRNESS, THE DEFENDANT, A MODEL PROBATIONER BETWEEN HIS ORIGINAL SENTENCE ON MARCH 16, 2001 AND HIS RESENTENCE ON MAY 19, 2003, SHOULD HAVE RECEIVED SOME CREDIT FOR HIS SUCCESSFUL FULFILLMENT OF HIS PROBATIONARY SENTENCE DURING HIS PRIOR APPEAL.

POINT III: AT RESENTENCING THE DEFENDANT CLEARLY AND CONVINCINGLY SHOWED THAT RELEVANT MITIGATING FACTORS WERE PRESENT TO AN EXTRAORDINARY DEGREE, AND, CUMULATIVELY, THEY GREATLY EXCEED ANY AGGRAVATING FACTORS.
We affirm.
Defendant's first contention that double jeopardy principles preclude his resentence lacks merit. For double jeopardy to attach, defendant's first sentence had to become final. When a defendant is convicted of a first- or second-degree crime, the Criminal Code provides the State with the opportunity to appeal if the court imposes a term appropriate for one degree lower than the conviction or if it imposes a non-custodial or probationary sentence. In such cases, the defendant's sentence does not become final until ten days after the decision is rendered. N.J.S.A. 2C:44-1f(2) states:
In cases of convictions for crimes of the first or second degree where the court is clearly convinced that the mitigating factors substantially outweigh the aggravating factors and where the interest of justice demands, the court may sentence the defendant to a term appropriate to a crime of one degree lower than that of the crime for which he was convicted. If the court does impose sentence pursuant to this paragraph, or if the court imposes a noncustodial or probationary sentence upon conviction for a crime of the first or second degree, such sentence shall not become final for 10 days in order to permit the appeal of such sentence by the prosecution.

[Emphasis supplied.]
See also Roth, supra, 95 N.J. at 360, 471 A.2d 370; State v. Sanders, 107 N.J. 609, 616, 527 A.2d 442 (1987); State v. Gould, 352 N.J.Super. 313, 318-19, 800 A.2d 173 *680 (App.Div.2002). In addition, Rule 3:21-4(i) provides: "In the event the court imposes sentence pursuant to N.J.S.A. 2C:44-1f (2), such sentence shall not become final until 10 days after the date sentence was pronounced." Here, defendant's first sentence was issued on March 16, 2001. On March 22, 2001 the State appealed the sentence, six days after sentencing. Because the State appealed within the tenday period, Evers's sentence never became final.
Not only did the State's appeal preclude the sentence from becoming final within ten days after the March 16, 2001 hearing, but it also effected a mandatory stay of the sentence under Rule 2:9-3(d). That rule states in relevant part:
[E]xecution of sentence shall be stayed pending appeal by the State pursuant to N.J.S.A. 2C:44-1f(2). Whether the sentence is custodial or non-custodial, bail pursuant to R. 2:9-4 shall be established as appropriate under the circumstances. A defendant may elect to execute a sentence stayed by the State's appeal but such election shall constitute a waiver of the right to challenge any sentence increase on grounds that execution has commenced.
Under the 1981 amendments to Rule 2:9-3(d), this stay is mandatory. Sanders, supra, 107 N.J. at 616, n. 7, 527 A.2d 442. So, as Evers's initial sentence was not final during the ten-day period following its imposition, N.J.S.A. 2C:44-1f(2), it lacked finality after the ten-day period because of the Rule 2:9-3(d) stay. Because a final sentence never became effective, double jeopardy never attached.
Defendant urges that double jeopardy attached because the State did not affirmatively file for a stay pending appeal until December 17, 2001, and the fact that defendant began to serve his probationary sentence within that time frame demonstrated his belief that his sentence was final. We reject this argument, since, as stated, defendant's stay of sentence was effective under Rule 2:9-3(d) as of March 22, 2001 when the State filed its notice of appeal to this court. Defendant was charged with notice of the stay and had no reasonable expectation of finality. As the Sanders court explained, "the Code of Criminal Justice expressly provides for prosecutorial appeal of a lenient sentence. N.J.S.A. 2C:44-1f(2). Defendants are charged with notice of the terms of this provision." Sanders, supra, 107 N.J. at 620, 527 A.2d 442.
We find additional authority for this determination in the last sentence of Rule 2:9-3(d) which provides: "A defendant may elect to execute a sentence stayed by the State's appeal but such election shall constitute a waiver of the right to challenge any sentence increase on the grounds that execution has commenced." On May 2, 2001, defendant elected to begin his sentence. Under Rule 2:9-3(d) this election allowed him to start his probationary sentence, but it constituted a waiver of his right to later challenge a sentence increase, as he does now, on the grounds that he has already undergone significant demands upon his liberty as a result of the probation time that he served pending his appeal. Although we recognize protections against double jeopardy as critical to our constitutional scheme, we nevertheless believe defendant's double jeopardy argument unavailing in these circumstances.
In his next point, defendant argues that he is entitled to jail credit for time served on probation. The sentencing judge determined that defendant was not entitled to any credit for probation time. Since that decision is supported by the record and case law, we decline to disturb it here.
*681 Rule 3:21-8 states: "The defendant shall receive credit on the term of a custodial sentence for any time served in custody in jail or in a state hospital between arrest and the imposition of sentence." If the rule applies, the credit is mandatory. State v. Grate, 311 N.J.Super. 456, 458, 710 A.2d 554 (App.Div.1998). Even if the rule does not apply, the credit may be awarded based on considerations of fairness, justice and fair dealing. Ibid. Custody under Rule 3:21-8 means an involuntary confinement in a penal or medical facility. State v. Reyes, 207 N.J.Super. 126, 143-44, 504 A.2d 43 (App.Div.), certif. denied, 103 N.J. 499, 511 A.2d 671 (1986).
It is axiomatic, however, that a defendant receives no credit for a probationary term served before a custodial sentence. At the initial sentencing on March 16, 2001, defendant was sentenced to probation with 364 days to serve in custody. The custodial portion of the sentence was stayed for six months and was suspended pending the State's appeal. Defendant never served time in custody.
Defendant relies on State v. Rosado, 131 N.J. 423, 621 A.2d 12 (1993) and State v. Williams, 167 N.J.Super. 203, 400 A.2d 796 (App.Div.1979), aff'd, 81 N.J. 498, 410 A.2d 251 (1980), but these cases are both distinguishable. In Rosado, defendant was sentenced to five years probation conditioned upon serving 364 days in the county jail. Rosado, supra, 131 N.J. at 425, 621 A.2d 12. He was granted parole and released from jail. When his parole supervision expired, he began probation. Because defendant violated probation, he was resentenced to a five-year custodial term with a three-year parole disqualifier. Ibid. The trial judge credited defendant for time served in the county jail. Ibid. On appeal, this court gave defendant additional credit for time spent on parole from the county jail term. Id. at 426, 621 A.2d 12.
Rosado addresses time spent on parole after serving a custodial sentence but before entering probation. Rosado is distinct from the case here because Evers never served a custodial sentence and was never placed on parole. He only served a non-custodial probationary sentence. Rosado is thus inapposite.
Williams is also distinguishable. There, the defendant was sentenced to a custodial term of not less than fourteen nor more than fifteen years in state prison. Williams, supra, 167 N.J.Super. at 205, 400 A.2d 796. A year and several months later, defendant moved for a change of sentence under Rule 3:21-10. A different judge suspended the remainder of defendant's sentence, placed defendant on probation for five years, and required defendant to attend an inpatient drug rehabilitation program as a condition of probation. Ibid. The State appealed the resentence. This court reversed the reduced sentence as a mistaken exercise of discretion. The Supreme Court affirmed this court's decision. State v. Williams, 139 N.J.Super. 290, 353 A.2d 549 (App.Div.1976), aff'd o.b., 75 N.J. 1, 379 A.2d 233 (1977).
Defendant was sent back to prison after the Supreme Court decision. After his return, he filed a motion for sentence credit for time spent on probation during the appellate He proceedings. This court ruled he was entitled to credit. Williams, supra, 167 N.J.Super. at 209, 400 A.2d 796. We stated:
We are satisfied that the failure to credit defendant with the time he spent on probation from November 20, 1974 until November 14, 1977 constitutes multiple punishment for the same offense and is therefore in violation of the *682 Fifth Amendment's guarantee against double jeopardy.
Without question, the double jeopardy clause of the Fifth Amendment not only protects against a second prosecution for the same offense after acquittal, or after conviction, but also against "multiple punishments for the same offense."
"And * * * there has never been any doubt of (this rule's) entire and complete protection of the party when a second punishment is proposed in the same court, on the same facts, for the same statutory offence." Additionally, it is also clear that the Fifth Amendment's protection applies to the states through the Fourteenth Amendment.
We believe it equally pertinent to point out that, contrary to the State's position, R. 3:21-8 has no application in this case. The rule deals with credit for confinement pending sentence and limits such credit to "time (defendant) has served in custody in jail or in a State hospital * * *." Thus, the State's reliance on State v. Smeen, 147 N.J.Super. 229, 371 A.2d 93 (App.Div.1977), certif. denied, 74 N.J. 263, 377 A.2d 668 (1977), is inappropriate. That case dealt with defendant's entitlement to credit on a custodial sentence for time spent between arrest and imposition of sentence in an in-patient drug abuse treatment program. We held he was not "in custody" within the intendment of the rule, and therefore not entitled to credit. We do not perceive our decision today to be in conflict with Smeen.

Nor are the facts in this case similar to State v. Braeunig, 135 N.J.Super. 89, 342 A.2d 596 (Law Div.1975), modified, 140 N.J.Super. 245, 356 A.2d 33 (App. Div.1976), certif. denied, 66 N.J. 325, 331 A.2d 25 (1974). In Braeunig the court, in our judgment, properly denied defendant credit pursuant to R. 3:21-8 for time spent under probationary supervision while on bail appealing a custodial sentence. Like Smeen, the court was dealing with an interpretation of what is "custody" prior to execution of the actual custodial sentence, and therefore the case has no application here.
In the case at hand we are dealing with additional punishment during service of a sentence previously imposed.

[Id. at 205-207, 400 A.2d 796 (citations omitted).]
The Williams court based its ruling on double jeopardy concerns. As already discussed, double jeopardy does not apply in this case. Consequently, Evers could only rely on Williams for its discussion of Rule 3:21-8. Yet that discussion is adverse to Evers's position here. Williams found Rule 3:21-8 inapplicable because that rule deals with credit for time in confinement. We observe that "probationary supervision either before or after conviction is, ordinarily, not custody either in concept or in practical effect, but is rather an alternative to custody." Smeen, supra, 147 N.J.Super. at 233-234, 371 A.2d 93 (citations omitted). We have described probation as seeking "to achieve the rehabilitation of persons convicted of [a] crime by returning them to society during a period of supervision, rather than sending them into the unnatural and, all too often, socially unhealthful atmosphere of prisons and reformatories." Braeunig, supra, 135 N.J.Super. at 93, 342 A.2d 596. Probation is not the same as incarceration.
We hold that defendant is not entitled to credit for time served on probation because his probation was not as restrictive and confining as a custodial sentence. Defendant was free to go about his daily life with the exception of a few conditions, such as attending therapy and reporting to his probation officer. His free will and choice were not impaired as if he were in *683 custody. We add our agreement with the observation of the sentencing judge that the absence of any measures or guidelines on how a court should distribute such credit cuts against defendant's suggestion that there is any credit entitlement.
We address defendant's final argument that his resentence was excessive. Defendant claims that relevant mitigating factors are present to an extraordinary degree, and, cumulatively, they greatly exceed any aggravating factors. Defendant asserts:
[W]hile the trial court noted that aggravating factors previously identified were still present to a `very, very slight' degree, it is difficult to read the transcript and not be convinced that if the mitigating factors clearly and convincingly outweighed the aggravating factors on March 16, 2001, then by May 19, 2003 the separation between them did nothing but increase.
When reviewing a trial court's sentencing decision, "[a]n appellate court may not substitute its judgment for that of the trial court." Johnson, supra, 118 N.J. at 15, 570 A.2d 395 (citation omitted). This court can modify a sentence when the lower court was clearly mistaken, or demonstrates a clear abuse of discretion. Roth, supra, 95 N.J. at 363-364, 471 A.2d 370. Because we believe the resentencing judge appropriately weighed defendant's aggravating and mitigating factors, and had a sufficient factual basis to support that analysis, we will not disturb the judge's imposition of sentence.
During resentencing, the judge found applicable, aggravating factors three (risk that defendant will commit another crime), and nine (need to deter defendant and others from violating the law). These were the same aggravating factors the judge found to exist at the initial sentencing in March 2001. The judge found applicable mitigating factors two (defendant did not contemplate his conduct would cause or threaten serious harm), seven (defendant has no history of prior delinquency or criminal activity and has led a law-abiding life for a substantial period of time before commission of present offense), and ten (defendant is particularly likely to respond affirmatively to probationary treatment). These were the same mitigating factors the judge found to exist at the March 2001 sentencing, except that at the initial sentencing the judge also found factor twelve to apply (the willingness of defendant to cooperate with law enforcement authorities). At the resentencing, the judge also considered some non-statutory factors, such as "defendant's adherence to the terms of his original sentence" and "defendant's remorsefulness, as well as his recent injury to his hand that necessitates physical therapy, which would be interrupted by his imprisonment."
At resentencing, the judge determined that the mitigating factors outweighed the aggravating factors such that defendant could be sentenced in the downgraded third-degree range. And, even though the judge found that the presumption of incarceration was not overcome, she did not sentence defendant to the third-degree presumptive term of four years. So, even though Evers received a custodial sentence, the judge drastically reduced defendant's sentence when she chose to sentence him within the range of a thirddegree crime rather than a second-degree crime.
We believe the judge correctly determined the presumption of incarceration was not overcome. The custodial sentence imposed is not excessive. Defendant is a middle-aged man who resides with his wife and child in a single family home. He has no mental infirmities or criminal disposition. Still, his circumstances do not reach *684 the level of extraordinariness that the Supreme Court envisioned when it decided Jarbath. Defendant viewed the images on the child pornography site for weeks before halting his behavior. He kept the images on his hard drive so he could view them daily. He was fully aware he was observing and disseminating child pornography. That his family relied upon him is not dispositive, since any number of criminal defendants have family members who rely upon them. It was not an abuse of discretion to apply the presumption of incarceration; nor was the sentence excessive, as it did not even rise to the presumptive term for a third-degree offense.
For these reasons, we affirm Judge Klein's resentence without qualification.
Affirmed.