**RECORD IMPOUNDED**

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-5119-13T1

STATE OF NEW JERSEY
IN THE INTEREST OF
JUVENILE, I.C.

_____

| APPROVED FOR PUBLICATION |
| :---: |
| September 19, 2016 |
| APPELLATE DIVISION |

Submitted September 12, 2016 — Decided  September 19, 2016

Before Judges Sabatino, Haas and Currier.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Monmouth County, Docket No. FJ-13-1168-14 and FJ-13-1228-14.

Christopher J. Gramiccioni, Monmouth County Prosecutor, attorney for appellant/cross-respondent State of New Jersey (Paul H. Heinzel, Assistant Prosecutor, and Joshua D. Detzky, Assistant Prosecutor, on the brief).

Joseph E. Krakora, Public Defender, attorney for respondent/cross-appellant I.C. (Jennifer L. Gottschalk, Designated Counsel, on the brief).

The opinion of the court was delivered by

HAAS, J.A.D.

In this appeal and cross-appeal, we address the issue of whether a juvenile was entitled to credit on his suspended sentence for the time he spent in a residential community home program as part of his probationary sentence to the Juvenile

Intensive Supervision Program ("JISP").[1] We also consider whether the juvenile should have been granted credit on his sentence for the period during which he participated in the JISP following his completion of the community home program.

Based upon our review of the record and applicable law, we hold that the juvenile was not entitled to credits for either of these periods. Therefore, we affirm the trial judge's decision denying the juvenile's request for credits for his time in the community home program, and reverse the judge's decision

---

[1] As our Supreme Court observed in State in the Interest of K.O., 217 N.J. 83, 88 n.3 (2014),

> JISP is a statewide dispositional alternative to juvenile detention that exposes offenders to intensive rehabilitation techniques regarded as "more stringent than juvenile probation, but less rigid than detention or commitment." The Juvenile Intensive Supervision Program, (JISP), New Jersey Courts, http://www.judiciary.state.nj.us/probsup/jisp_intro.html (last visited [Sept. 12, 2016]). "JISP works cooperatively with the Family Court and community agencies to provide support services to assist participants and their families. These vital relationships help to connect participants with necessary education and health services that will enhance their potential for success." Ibid. The program includes the monitoring of required school or work attendance, community service, curfew requirements, substance abuse or mental health treatment, and victim restitution. Ibid.

granting the juvenile credits for the period he participated in the JISP.

## I.

The police arrested sixteen-year-old I.C. on December 25, 2012 for allegedly stabbing a victim in the arm with a steak knife. On that same date, the police charged I.C. with four acts of delinquency that, if committed by an adult, would have constituted second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1) (charge one); fourth-degree criminal trespass, N.J.S.A. 2C:18-3(a) (charge two); third-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(d) (charge three); and fourth-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(d) (charge four). Following his arrest, I.C. was detained in custody at the Youth Detention Center.

At the time of his arrest, I.C. was on probation as a result of a prior adjudication of delinquency. On January 15, 2013, the Monmouth County Probation Division charged I.C. with a violation of that probation because he had incurred new charges.

Pursuant to a negotiated plea agreement, I.C. pled guilty on March 11, 2013 to second-degree aggravated assault (charge one) and to a violation of probation. As part of his plea agreement, the State agreed to dismiss the remaining charges in the December 25, 2012 complaint. The State advised I.C. that it

would recommend that he be detained for a period of two years at the Jamesburg Training School for Boys ("Jamesburg"). However, the plea agreement provided that I.C. could seek a non-custodial sentence, specifically, a probationary term under the JISP.

On April 15, 2013, the trial judge sentenced I.C. to two concurrent, two-year sentences in the custody of the Juvenile Justice Commission on the aggravated assault (charge one) and violation of probation charges. However, the judge suspended these custodial sentences and ordered I.C. to serve two concurrent, eighteen-month terms in the JISP. As a condition of this probationary term, the judge ordered I.C. to first attend and complete the Southern Residential Community Home program.[2] The judge further ordered that upon I.C.'s completion of this

---

[2] "[P]robationers" assigned to the all-male Southern Residential Community Home ("Southern" or "community home program") spend approximately five months in the program. N.J. Dep't of Law & Pub. Safety, Juvenile Justice Commission, Community Programs, Residential Community Homes, http: //www.nj.gov/oag/ jjc/residential_comm_southern_hm.html (last visited September 12, 2016). Upon entering the program, the juvenile is assessed and an Individualized Case Action Plan is developed. Ibid. Depending upon the juvenile's specific needs, the juvenile may participate in educational programs to enable him to earn a GED. Ibid. In addition, the juvenile may "further [his] education through [an] Employment and Support Work Program." Ibid. Probationers are permitted to go on "supervised shopping trips" and to other recreational facilities off campus when accompanied by staff. Ibid. The program is intended "to provide a continuum of services designed to meet the aftercare needs of each individual resident" and its "goal . . . is to reduce recidivism." Ibid.

program, I.C. was to serve the rest of his probationary term at home in the JISP.

At the time of sentencing on April 15, 2013, a placement was not yet available for I.C. in the community home program. Therefore, the judge retained I.C. in the detention center until April 18, 2013, when he began his program at Southern. Between the date of his arrest on December 25, 2012 and his placement in the community home program on April 18, 2013, I.C. spent 115 days in the juvenile detention center.

On October 8, 2013, I.C. finished the program at Southern and returned home to complete the remainder of his eighteen-month probationary sentence in the JISP with electronic monitoring.[3] As part of his probation, I.C. had to abide by a curfew, abstain from illegal drug use and consumption of alcohol, and attend an internship program for possible future employment. I.C. also agreed to "submit at any time to a search of [his] person, or places and things under [his] immediate control." I.C. lived with his family during his probationary period.

On December 20, 2013, less than three months after returning home, I.C. went into the local high school without

---

[3] Thus, I.C. participated in the community home program for 173 days.

permission while carrying a knife. On March 20, 2014, the police arrested I.C. for this conduct and charged him with third-degree aggravated assault, N.J.S.A. 2C:12-1(b)(2) (charge one); third-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(d) (charge two); fourth-degree possession of a weapon on school grounds, N.J.S.A. 2C:39-5(e)(2) (charge three); and fourth-degree criminal trespass, N.J.S.A. 2C:18-3(a) (charge four). Because I.C. was on probation at the time of his arrest, I.C.'s JISP officer also charged him with a violation of that probation.

On May 6, 2014, I.C. entered into a plea agreement and pled guilty to an amended charge of fourth-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(d) (charge three) and to the violation of probation. In return for his plea, the State agreed to dismiss the remaining charges and to recommend that the judge impose the previously suspended two concurrent, two-year sentences at Jamesburg. Once again, defendant retained the right to seek a non-custodial sentence.

On June 6, 2014, the trial judge[4] entered a final adjudication of delinquency and directed that I.C. now serve his previously suspended two-year custodial sentence at Jamesburg on

---

[4] The same trial judge presided at each proceeding involved in this appeal.

the violation of probation. The judge also sentenced I.C. to a concurrent one-year term at Jamesburg on the weapons charge.[5]

The judge then turned to the issue of the appropriate credits due to I.C. against his two-year aggregate custodial sentence. The judge determined that I.C. was entitled to a credit of 115 days for the period he was in custody in a detention center between December 25, 2012, the date of his arrest on the charges that led to the imposition of the initial two-year suspended sentence, and the date he was placed in the community home program as part of his eighteen-month probationary term in the JISP. The judge also found that I.C. should receive an additional credit of seventy-nine days for the period he spent in detention before his sentencing on the current charges. These particular credits, which total 194 days, are not in dispute in this appeal.

The judge denied I.C.'s request for an additional 173 days of credit against his custodial sentence for the time he spent at Southern. In so ruling, the judge relied upon our decision in State in the Interest of S.T., 273 N.J. Super. 436, 447 (App. Div.), certif. denied, 138 N.J. 263 (1994), where we held that a juvenile was not entitled to credit for time spent in a

_____

[5] At the time of sentencing, I.C. had been in custody in the detention center for seventy-nine days since the date of his arrest on March 20, 2014.

rehabilitative sex offender program as part of "a probationary disposition."  See also State in the Interest of C.V., 201 N.J. 281, 294 (2010) (holding that a juvenile was not entitled to credit for time spent in residential treatment programs as a condition of probation).

However, the judge granted I.C.'s separate request for credit for the 163 days he was at home under the JISP with electronic monitoring.  The judge reasoned that the conditions of I.C.'s participation in the JISP "parallel[ed] the restrictions of incarceration."  Specifically, the judge stated that after he returned home from Southern, "I.C. was in an environment where . . . he had to wear the electronic bracelet, he had certain curfews, he had certain reporting . . . requirements."  Because these requirements were stricter than those imposed under less intensive forms of probation, the judge determined that I.C. should receive 163 days of credit against his two-year custodial aggregate sentence for the time he participated in the JISP.[6]

---

[6] Thus, the judge granted I.C. a total of 357 days credit against his aggregate two-year sentence to Jamesburg.  On August 22, 2014, the judge denied I.C.'s request for additional credits and that decision is not a subject of the current appeal.

Both I.C. and the State filed appeals contesting different aspects of the judge's decision.[7]

## II.

On appeal, I.C. argues that the trial judge "erred when [he] denied custodial credit for the time [I.C.] spent at the State-run residential facility because it was a condition of his JISP participation." In its appeal, the State contends that the judge incorrectly awarded I.C. credit for the time he spent at home in the JISP.

As the Supreme Court observed with regard to adult sentences in State v. Hernandez, 208 N.J. 24, 48-49 (2011), "there is no room for discretion in either granting or denying credits." Thus, a challenge to an award or denial of credits constitutes an appeal of a sentence "not imposed in accordance with law." State v. Rippy, 431 N.J. Super. 338, 347 (App. Div. 2013) (quoting State v. Acevedo, 205 N.J. 40, 45 (2011)), certif. denied, 217 N.J. 284 (2014). Therefore, our review is de novo. State v. DiAngelo, 434 N.J. Super. 443, 451 (App. Div. 2014).

---

[7] The State filed its appeal first, followed by I.C.'s cross-appeal. The appeal was originally listed on our Excessive Sentence Oral Argument calendar. However, after reviewing the issue presented, we ordered the parties to file briefs and listed the appeal on our plenary calendar.

It is well established that like adult offenders, juveniles are entitled to "credit on the term of a custodial sentence for any time served in detention or court-ordered shelter care between apprehension and disposition." R. 5:21-3(e); see State in the Interest of W.M., 147 N.J. Super. 24, 26 (App. Div. 1977) (noting that it is "a matter of fundamental fairness that the juvenile receive credit for predisposition custody"); see also State v. Franklin, 175 N.J. 456, 472 (2003) (holding that juveniles are entitled to gap-time credit in appropriate cases). It is also "axiomatic" that credits can only be awarded for the days that an offender has been "in custody." State v. Evers, 368 N.J. Super. 159, 170 (App. Div. 2004); cf. State v. Boykins, ___ N.J. Super. ___ (App. Div. 2016) (slip op. at 10-11) (concluding that a defendant who committed a second offense while on bail awaiting trial on his first offense was "in custody" within the meaning of N.J.S.A. 2C:44-5(b) for purposes of determining whether he could be sentenced to an extended term, but noting that the defendant was not entitled to jail credit for the time he spent on probation or on bail prior to his trial on the second offense). Thus, an offender is not entitled to credit for time spent serving a probationary sentence. Evers, supra, 368 N.J. Super. at 170.

Judges in the Family Part have great discretion in determining an appropriate disposition for a juvenile. C.V., supra, 201 N.J. at 295. After adjudicating a juvenile as delinquent, the judge may incarcerate the juvenile in a detention center or, as was the case here, place the juvenile on probation. Ibid. "Probation is a disposition that offers the [judge] a great amount of flexibility to achieve the [Juvenile Justice] Code's[8] rehabilitative goals." Id. at 296. Pursuant to N.J.S.A. 2A:4A-43(b)(3), a judge may

> [p]lace the juvenile on probation to the chief probation officer of the county or to any other suitable person who agrees to accept the duty of probation supervision for a period not to exceed three years upon such written conditions as the court deems will aid rehabilitation of the juvenile.

"By granting the [trial judge] a vast amount of flexibility in setting the conditions of probation, N.J.S.A. 2A:4A-43(b)(3) allows the [judge] to construct requirements designed to secure appropriate behavior from the juvenile while obtaining the particularized rehabilitative and therapeutic help needed by the particular child." C.V., supra, 201 N.J. at 297.

A.

Here, the trial judge suspended I.C.'s initial two-year custodial sentence and placed him on probation in the JISP for

---

[8] N.J.S.A. 2A:4A-20 to -90.

an eighteen-month period.  As a condition of that probation, the judge ordered I.C. to participate in Southern's community home program.  In his cross-appeal, I.C. argues that, after I.C. violated his probation, the judge should have given him credit for the 173 days he had already spent at Southern.  We disagree.

In S.T., we rejected a similar argument.  Supra, 273 N.J. Super. at 447.  In that case, the juvenile was placed on probation for three years conditioned on the successful completion of an eighteen-month residential program at the Pinelands Residential Group Program ("Pinelands").  Id. at 439.  Like the Southern program at issue in the present case, the focus of the Pinelands program was the rehabilitation of the juvenile offender.  Id. at 446.[9]  The Pinelands program provided the juveniles placed there with counseling, academic courses, and vocational instruction.  Ibid.  The juveniles at Pinelands were permitted to join in staff-supervised shopping trips and recreational activities.  Id. at 447.  The juveniles also had to comply with the facility's rules of behavior.  Id. at 446-47.

Under these circumstances, we determined that the juvenile in S.T. "participated in the Pinelands program as a condition of probation, not as an incident of incarceration."  Id. at 443.

---

[9]  The juveniles at Pinelands had been adjudicated as sex offenders.  Ibid.

Therefore, we held that the juvenile was not entitled to credit against his subsequent custodial sentence for the time he spent in this program.  Id. at 447.  In explaining our ruling, we stated:

> The[] parameters of participation in the Pinelands program accord with the purposes of the Code of Juvenile Justice. They are simply reasonable terms of a probationary disposition.  Unless the disposition made by the Family Part judge purposely confined a juvenile to incarceration, such restrictions could not be considered custodial.  Applied to the Pinelands program, where by definition all participants are juvenile probationers, it would be antithetical to the Code of [Juvenile] Justice and its emphasis on rehabilitation to determine these rules act to convert the program from one of treatment to one of custody.  Accordingly, we refuse to reduce a custodial disposition for a probation violation by time spent at this residential probation facility.
>
> [Id. at 447.]

Similarly, in C.V., the Court held that the juvenile was not entitled to credit for the time she spent in two similar residential programs.  Supra, 201 N.J. at 294.  The Court noted that "C.V., like S.T., served time in restrictive residential programs as a condition of probation" that "were meant to facilitate her rehabilitation."  Ibid.  Therefore, the Court concluded that the juvenile's placements in these programs did

13

"not satisfy the intended concept of detention in <u>Rule</u> 5:21-3(e) to qualify for mandatory day-to-day credit."  <u>Ibid.</u>

The trial judge properly applied these precedents in this case and correctly determined that I.C. was not entitled to 173 days of credit against his two-year custodial sentence for the time he spent at Southern.  As in <u>C.V.</u> and <u>S.T.</u>, I.C. was placed at Southern as a condition of his probation and his custodial sentence was suspended.  Southern developed an individualized case action plan for I.C., and he participated in an educational program.  As a result, I.C. obtained his G.E.D.  Although I.C. was restricted to the program's campus, he was permitted to accompany staff on field and shopping trips.  Because I.C. was on probation rather than "in custody" while at Southern, he was not entitled to credit against his subsequent custodial sentence for the time he spent in this community program.  Therefore, we affirm the judge's denial of I.C.'s request for these credits.

B.

Turning to the State's appeal, it asserts that the judge mistakenly granted I.C. 163 days of credit for the period after he returned home from Southern to serve the remainder of his eighteen-month probationary term in the JISP.  We agree.

As noted above, "JISP is a statewide dispositional alternative to juvenile detention."  <u>K.O.</u>, <u>supra</u>, 217 <u>N.J.</u> at 88

n.3. While the "rehabilitation techniques" employed in the JISP are "more stringent than juvenile probation," they are "less rigid than detention or commitment." Ibid. Because the JISP is therefore not "detention or court-ordered shelter care," I.C. was not entitled to credit on his custodial sentence for the time he spent in the JISP. R. 3:21-3(e).

Indeed, the restrictions placed on I.C. in the JISP were less restrictive than those imposed at Southern or at the residential facilities involved in C.V. and S.T., where the juveniles were housed away from home and could not leave the facilities without staff approval or an escort. Yet, as discussed above, their participation in these residential programs was deemed to be non-custodial for purposes of detention credits.

Here, I.C. lived with his family after his release from Southern. He was not permitted to use illegal drugs or alcohol, had to abide by a reasonable curfew, and was required to participate in an employment internship program. While I.C. was subject to searches of his person and his home, and had to abide by other rules of behavior, these were normal requirements of probation designed to "aid [the] rehabilitation of the juvenile." N.J.S.A. 2A:4A-43(b)(3). Contrary to the trial judge's finding, these restrictions did not "parallel the

restrictions of incarceration" and, therefore, I.C. was not entitled to credits for the time he spent at home in the JISP.

The fact that I.C. was required to wear an electronic monitoring device does not change this result. We have previously held that a defendant is not entitled to jail credit for time spent participating on an electronic monitoring wristlet program as a condition of his pretrial release on bail. State v. Mastapeter, 290 N.J. Super. 56, 62-63 (App. Div.), certif. denied, 146 N.J. 569 (1996). Similarly, we have held that defendants who were sentenced to a home detention program where their physical location was monitored by electronic devices were not serving a "term of imprisonment" as required by N.J.S.A. 2C:40-26, a statute mandating jail terms for persons convicted of driving while their license was suspended for a violation of our drunk driving laws. State v. Harris, 439 N.J. Super. 150, 160 (App. Div.), certif. denied, 221 N.J. 566 (2015).

Although he was required to maintain a reasonable curfew, I.C. was not on "house arrest" during his participation in the JISP. The monitoring device he wore did not restrict his movements. Indeed, I.C. was wearing the device when he carried a knife into a high school that he did not attend. Thus, the fact that I.C. was required to wear a monitoring bracelet did

16

not convert his probationary term in the JISP to a custodial sentence entitling him to the award of credits.

Finally, we briefly note that the judge also erred by attempting to compare the JISP to the adult Intensive Supervision Program ("ISP") because the two programs are not the same, and serve different purposes. The JISP is clearly a probation program designed as an "alternative to juvenile detention." K.O., supra, 217 N.J. at 88 n.3. On the other hand, the adult ISP "is essentially a post-sentence, post-incarceration program of judicial intervention and diversion back to the community." State v. Clay, 230 N.J. Super. 509, 512 (App. Div. 1989), aff'd o.b., 118 N.J. 251 (1990). It has been described as "a form of intermediate punishment between incarceration and probation -- for certain carefully screened non-violent offenders." Id. at 513 (emphasis added). Adult "ISP was designed to test whether an intermediate form of punishment, one that would be less costly than prison, but more onerous and restrictive than traditional probation, would achieve the criminal justice objective of deterrence and rehabilitation." New Jersey Judiciary Observes 20th Anniversary of ISP: Changing Lives Through Intensive Supervision, New Jersey Courts, http://www.judiciary.state.nj.us/pressrel/2003/pr031030.html (last

visited Sept. 12, 2106). Adult offenders earn "ISP T[ime] C[redit,]" rather than jail credits, for the days they spend in the ISP following their release into the community. State v. Adams, 436 N.J. Super. 106, 110 (App. Div.), certif. denied, 220 N.J. 101 (2014).

In sum, we conclude that the trial judge erred in granting I.C. credit against his two-year aggregate custodial sentence for the 163 days he spent at home in the JISP. Therefore, we reverse this portion of the judge's determination and remand for the issuance of a corrected Juvenile Order of Disposition setting forth the correct number of credits due I.C.[10]

Affirmed in part; reversed in part; and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

---

[10] As noted above, I.C. was entitled to 194 days of credit, comprising the 115 days he spent in the detention center following his arrest on December 25, 2012 through April 18, 2013, and the 79 days he spent in the detention center following his arrest on March 20, 2014 through June 6, 2014, the date he was sentenced to Jamesburg.