# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1553-19T4

STATE IN THE INTEREST
OF A.D., a Juvenile.

Submitted April 28, 2020 – Decided June 16, 2020

Before Judges Yannotti and Currier.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Atlantic County, Docket No. FJ-01-0291-19.

Damon G. Tyner, Atlantic County Prosecutor, attorney for appellant State of New Jersey (John J. Santoliquido, Assistant Prosecutor, of counsel and on the brief).

Joseph E. Krakora, Public Defender, attorney for respondent A.D. (Brian P. Keenan, Assistant Deputy Public Defender, of counsel and on the brief).

PER CURIAM

On leave granted, the State appeals from the November 6, 2019 Family Part order denying its motion for waiver of the sixteen-year-old juvenile to the Law Division. After reviewing the contentions in light of the record and

applicable principles of law, we conclude it was an error of judgment to deny the motion. We reverse and remand the matter to be heard in the Law Division.

We derive the facts from the testimony elicited during the waiver hearing. On November 15, 2018, the Ventnor City Police Department responded to a 9-1-1 report of a shooting and a male laying on the sidewalk and discovered the body of the victim and a bicycle at the scene. An autopsy later revealed the victim sustained two fatal gunshot wounds to the neck and forearm. The two bullets were removed; one was a 0.22 caliber bullet. The cause of death was ruled a homicide.

The video surveillance recovered from the scene revealed that shortly before the 9-1-1 call, the victim parked his car in front of his house. Another person, later identified as A.D., was on a bike nearby, wearing a black jacket over a gray hooded sweatshirt along with tan pants and white-soled tan boots.

The victim got out of his car and entered his residence carrying a small child. He left the car running with its headlights on. The video footage shows A.D. getting off the bike and hiding underneath the stairs leading to the victim's front door.

When the victim came out of his house and walked down the stairs, A.D. approached him. At that point, they both moved out of the view of the

surveillance camera. However, video was obtained by a second camera in the area which displayed the victim's body on the sidewalk. In addition, the video captured the victim's car driving away from the scene. As it does so, the car hits another parked vehicle on the street. Witnesses reported hearing two gunshots.

Later that evening, police officers located the victim's vehicle outside a public housing complex. Surveillance cameras in the area showed A.D., in clothing that matched the description of the assailant, get out of the victim's vehicle and enter a nearby residence. When the police arrested A.D. the next morning, he was carrying the victim's wallet, cell phone, and car keys in his pocket. During the search of the residence pursuant to a warrant, the police retrieved a 0.22 caliber handgun and a pair of white-soled tan boots.

A.D. was charged in a juvenile complaint with acts of delinquency that, if committed by an adult, would constitute: first-degree murder, N.J.S.A. 2C:11-3(a)(1); first-degree felony murder, N.J.S.A. 2C:11-3(a)(3); first-degree robbery, N.J.S.A. 2C:15-1(a)(1); first-degree carjacking, N.J.S.A. 2C:15-2(a)(3); second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b)(1); and second-degree possession of a handgun for an unlawful purpose, N.J.S.A. 2C:39-4(a)(1).

In March 2019, the State moved to waive jurisdiction of the case to the Law Division and try A.D. as an adult under N.J.S.A. 2A:4A-26.1 and Rule 5:22-2. The State supported its application with an eleven-page statement of reasons addressing the statutory factors under N.J.S.A. 2A:4A-26.1(c)(3). Following its analysis of each factor, the assistant prosecutor stated:

> The State has reviewed the facts of this case as set forth in greater detail above and in the attached exhibits, as well as the supporting evidence and escalating history with the [c]ourt. The State having assessed, evaluated, and weighed this factor, submits that [the factor] weighs in favor of waiver to [the] Law Division-Criminal Part.

Following a probable cause hearing, the court issued an oral decision on November 6, 2019, memorialized in an accompanying written opinion, denying the State's motion. The court found probable cause to conclude A.D. committed the charged offenses. But the court concluded the State had abused its discretion and failed to meet its burden to support a waiver of A.D. to the Law Division because the prosecutor's evaluation of most of the statutory factors was inadequate. We granted the State's motion for leave to appeal.

On appeal, the State argues the court erred in denying its waiver motion because it thoroughly evaluated each statutory factor and did not abuse its discretion. We agree.

4

Our standard of review on the appeal of referral cases "is whether the correct legal standard has been applied, whether inappropriate factors have been considered, and whether the exercise of discretion constituted a 'clear error of judgment' in all of the circumstances." State in Interest of J.F., 446 N.J. Super. 39, 51-52 (App. Div. 2016) (quoting State v. R.G.D., 108 N.J. 1, 15 (1987)). We give consideration to the family court's expertise, common sense, and experience in adjudicating such matters. Id. at 52 (citing R.G.D., 108 N.J. at 16 n.7).

However, an abuse of discretion review does not permit the family court to "substitute its judgment for that of the prosecutor." State in re V.A., 212 N.J. 1, 8 (2012). It requires a limited, yet substantive, review to ensure the prosecutor made an individualized decision about the juvenile that was neither arbitrary nor an abuse of the prosecutor's considerable discretion. Ibid.

In a juvenile delinquency case before the family court, the State may seek waiver of the juvenile to adult court, without consent, by filing a motion for referral. N.J.S.A. 2A:4A-26.1(a). The statute requires the State to provide a "written statement of reasons clearly setting forth the facts used in assessing all factors contained in [N.J.S.A. 2A:4A-26.1(c)(3)], together with an explanation

as to how evaluation of those facts support waiver for each particular juvenile." Ibid.

The court may deny a referral motion, however, "if it is clearly convinced that the prosecutor abused his [or her] discretion in considering" the eleven factors enumerated in the statute. N.J.S.A. 2A:4A-26.1(c)(3); R. 5:22-2(c). The prosecutor will be found to have abused his or her discretion if the decision: (1) fails to consider all relevant factors; (2) considered irrelevant or inappropriate factors; or (3) "amounted to a clear error in judgment." V.A., 212 N.J. at 22 (quoting State v. Bender, 80 N.J. 84, 93 (1979)). "Cursory or conclusory statements . . . lacking in detail" will not suffice. Id. at 8-9.

In considering a waiver motion for a juvenile, our Supreme Court has stated that it:

> must include a statement of reasons that sets forth the facts used to assess certain factors listed in the statute, together with an explanation about how those facts support waiver. The statement of reasons should apply the factors to the individual juvenile and not simply mirror the statutory language in a cursory fashion.
>
> [State in Interest of N.H., 226 N.J. 242, 250 (2016) (citations omitted).]

We turn then to a consideration of whether the State's waiver decision was a mistaken exercise of discretion. Our review begins with the statement of

6

reasons.  Because the court found the State satisfied its burden under factors N.J.S.A. 2A:4A-26.1(c)(3)(a) (nature and circumstances of the offense charged), (b) (whether the offense was against a person or property, allocating more weight for crimes against the person), and (c) (degree of the juvenile's culpability), we need not address those factors.  In addition, the State does not appeal the court's findings on factors (d) (age and maturity of the juvenile), and (k) (input of the victim or his family).

Under N.J.S.A. 2A:4A-26.1(c)(3)(e), the State must consider "[a]ny classification that the juvenile is eligible for special education . . . ."  In its statement of reasons, the prosecutor wrote:

> According to an August 2, 2016, psychological assessment, [A.D.] has a history of Child Study Team and other psychological and psychiatric evaluations. According to [the psychologist], his I.Q. falls between 89 and 104, within the low average to average range. His word reading is in the 6th grade level.  He is of average intelligence.  According to [the psychological report], [A.D.] began having behavior problems at school in 4th grade and was transferred to Atlantic County Special Services School [ACSSS], where he completed 4th grade, and remained there until 7th grade when he was placed in foster care.  He returned to [ACSS] in 8th grade, and then was sent to Lake Revere School District when his residence once again changed. After continued problems at school, he was sent to Coastal Learning, where his behavior worsened.  In April[] 2016, he returned to [ACSSS] and was expelled. He has been diagnosed with Adjustment Disorder with

disturbance of conduct, Conduct Disorder (CD) versus Oppositional Defiant Disorder (ODD), severe, with rule outs for Intermittent Explosive Disorder and Posttraumatic Stress Disorder (PTSD). It was recommended that he have . . . intervention for his ADHD[,] therapy with a behaviorist, placement in a residential program, and visitation with his mother.

. . . .

The State has reviewed the facts of this case as set forth in greater detail above and in the attached exhibits, as well as the supporting evidence and escalating history with the court. The juvenile was given the benefit of special schooling to address these deficits, and he was certainly of average intelligence to make the decision to take a loaded gun out on the street. The State having assessed, evaluated, and weighed this factor, submits that Factor (e) does weigh in favor of waiver to Law Division-Criminal Part.

In assessing the State's treatment of factor (e), the court found it lacking because the State did not "give due consideration of [A.D's] various school circumstances, nor the diagnoses that he was emotionally disturbed." We disagree. The State addressed A.D.'s psychological and psychiatric evaluations, mental health diagnoses as well as his average intelligence, and history of behavioral problems at school.

In addressing factor (f) (degree of criminal sophistication exhibited by the juvenile), the prosecutor summarized the facts regarding the events and underlying offenses and stated: "[A.D.] formed an elaborate and sophisticated

8

scheme to steal a car. He planned this by carrying a loaded gun to Ventnor, and then concealed himself and waited for the unsuspecting and unarmed victim as he attempted to get in his car to go to work." The State concluded that factor (f) weighed in favor of waiver.

The court found the State's assessment deficient, stating the prosecutor only "restate[d] the facts . . . but [did not] explain how . . . or what [was] assessed, and . . . [did] not explain any sort of evaluation." The State described the actions taken by A.D. – the planning entailed and the lying in wait for the victim to return to his car. We are satisfied this was a sufficient assessment of the factor.

In turning to factor (g) (nature and extent of any prior delinquency history), the State detailed A.D.'s extensive juvenile history. The State noted A.D. pled guilty on twelve occasions to the following offenses: third-degree receiving stolen property and third-degree conspiracy to commit credit card theft; second-degree eluding and third-degree receiving stolen property; third-degree burglary and third-degree theft; second-degree robbery and second-degree possession of a weapon for an unlawful purpose; third-degree burglary; disorderly persons theft; receiving stolen property and unlawful possession of a handgun; possession of hollow point bullets; theft and unlawful possession of a

firearm; disorderly persons simple assault; and disorderly persons theft. A.D. also pled guilty to a violation of probation.

In February 2017, while pending disposition for placement in a juvenile intensive supervision program (JISP),[1] A.D. ran away from Ranch Hope.[2] In June 2017, he was apprehended and sentenced to JISP and to a care maintenance organization (CMO) residential program.

Prior to his apprehension, A.D. committed additional offenses to which he pled guilty: fourth-degree joyriding; third-degree receiving stolen property; and fourth-degree credit card theft. He also pled guilty to a violation of probation. In August 2017, A.D. was sentenced to eighteen months at The Training School for Boys.

In November 2018, A.D. was paroled and transferred to the Vineland Preparatory Academy. A few days after the transfer, A.D. absconded from the program. About a week later, he was arrested for the death of the victim in this case. The State concluded that factor (g) weighed in favor of waiver.

---

[1] JISP is a dispositional alternative to juvenile detention. State in Interest of I.C., 447 N.J. Super. 247, 258 (App. Div. 2016) (citation omitted).

[2] Ranch Hope is a residential treatment program for troubled youth. In re Commitment of J.M.B., 197 N.J. 563, 583 (2009).

 A-1553-19T4

Although the court conceded there was a prior history, it determined the State had not placed the offenses into context, specifically during what period of time the events occurred. In addition, the court found the State had not considered "the fact that these are lower offenses and do not rise to the level of the seriousness of the offense that he has been charged . . . . Th[e] State does not, in any way, explain how it weighed the prior offenses."

We are satisfied the State did more than recite the history. Each set of charges was grouped by disposition date and dispositions were given for each delinquent act. In addition, a review of the charges reflects a misapprehension by the court as it reveals A.D. was previously adjudicated delinquent for several serious crimes, not just "lower offenses." Moreover, the recitation substantiates that A.D. was not deterred by probation or detention.

Factor (h) requires the State to assess the response of the juvenile if the juvenile has been previously detained in a custodial disposition in a State juvenile facility. The State wrote:

> On June 29, 2017, the juvenile was sentenced to JISP and a CMO residential program. After absconding from Ranch Hope and picking up new charges he was sentenced to [T]he Training School for Boys on August 24, 2017. This juvenile has had the benefit of many programs to address his criminal behavior, but his escalating criminal activity is undeterred. He was lodged in Harborfields between November 16, 2018

11

> until his transfer to The Training School in January[]
> 2019. In the few months he was there[,] he was
> disciplined on multiple occasions.

The State submitted that factor (h) weighed in favor of waiver.

In considering the submission on factor (h), the court stated, "that speaks for itself. The juvenile had been placed and certainly that is a factor that should be weighed and considered." Because the court has not given any reasons explaining how the State abused its discretion in its assessment of factor (h), we cannot agree that the State failed to carry its burden on the factor. The State detailed A.D.'s failed response to all of the programs and juvenile facilities.

In its assessment of factor (i) (current or prior involvement of the juvenile with child welfare agencies), the State provided a two-page single-spaced detailed response, which we summarize. The State began by reiterating A.D.'s psychological and psychiatric evaluations, average intelligence, diagnoses and recommended treatment discussed above.

The State added the following information. The New Jersey Division of Child Protection and Permanency (Division) received a referral regarding A.D.'s family reporting "drug usage, uncleanliness of the home, homelessness, and no food for the children." A.D. was placed in the care of a family friend for many years, who was granted full custody of A.D. in 2011.

A.D.'s biological mother did not have consistent visits with him. In 2014, the Division noted the biological mother had substance abuse issues and was participating in drug court. At the end of 2014, the Division became concerned about A.D.'s safety with the custodial parent, including the lack of supervision, substance abuse and domestic violence in the household and A.D.'s lack of participation in CMO services.

In January 2015, A.D. was no longer living at the custodial parent's home and the custodial parent advised the Division she no longer wanted him in her house. A.D. was subsequently placed in a resource home where he remained until July 2015. After A.D. threatened the resource family, they refused to care for him. In September 2015, A.D.'s maternal aunt filed for and was granted emergency custody.

In November 2015, A.D.'s maternal aunt reported to the Division that he had run away from her home and she could no longer retain custody of him. Several days later, he was located and placed in a second resource home. Thereafter, A.D.'s "behavior deteriorated" and he was transferred to the Coastal Learning Center. He was subsequently suspended for fighting on the school bus. In April 2016, he was removed from his second resource home and placed in a community treatment solutions (CTS) home in Williamstown "due to his

escalating poor behavior . . . ."  In May 2016, A.D.'s school called the police and contacted the Division after he threatened a teacher.

In September 2016, A.D.'s clinician reported to the Division that he was going to be discharged from the CTS home because he required a "higher level of care."  It was also reported A.D.: "[came and went] as he please[d] and [got] into fights constantly"; stole two bikes in August 2016 and was caught breaking into a store; and received an in-school suspension for shoving a teacher.

A.D. ran off from the resource home in September 2016.  In October 2016, his foster mother reported to police that she had found a gun in A.D.'s belongings.  She also stated she was concerned because A.D. had threatened to shoot her and others in the house.  In November 2016, he was arrested and, while awaiting transfer to another resource home, escaped from custody.  Several weeks later, A.D. was arrested in a stolen car.  He had a BB gun with him.

A.D. was placed in the Harborfields juvenile detention center in December 2016 and transferred to Ranch Hope in January 2017.  In February 2017, he ran away from Ranch Hope while awaiting court.  He was later charged with stealing a vehicle.  In April 2017, A.D. was arrested and remanded to Harborfields.  The

State submitted that factor (i) weighed in favor of waiver. The court did not make any ruling regarding factor (i) in its written opinion.[3]

Factor (j) requires the State to consider the juvenile's mental health history, substance abuse issues and emotional instability. The State described A.D.'s diagnoses and recommended treatment. The State also noted he was prescribed Depakote for ADHD while at Harborfields in 2018. The State found factor (j) weighed in favor of waiver. In considering factor (j), the court found the State had provided accurate information but did not "discuss or explain its evaluation of the factor."

In our careful review, we are satisfied the State did not abuse its discretion in seeking waiver of A.D. to the Law Division. The State submitted a comprehensive statement of reasons, providing responsive information for each factor. Although the State included a boilerplate sentence at the conclusion of each factor's assessment, submitting the factor weighed in favor of waiver, the State preceded each statement with a thorough analysis. The State did not merely parrot the statutory factors or focus only on the offense. Considered as

---

[3] In its oral decision, the court referred to factor (i) only in conjunction with factor (j), acknowledging that although the State provided extensive and accurate information regarding factors (i) and (j), it did not "clearly explain its evaluation of the facts and circumstances of . . . these factors . . . ."

A-1553-19T4

a whole, the statement of reasons reflects an individualized decision that was not arbitrary or an abuse of the State's considerable discretion. V.A., 212 N.J. at 8.

Reversed and remanded.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1553-19T4