NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-4526-17T1

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

WALEK P. DUNLAP,
a/k/a MONTANA,

    Defendant-Appellant.

_____

> **APPROVED FOR PUBLICATION**
>
> **February 6, 2020**
>
> **APPELLATE DIVISION**

Submitted November 18, 2019 – Decided  February 6, 2020

Before Judges Messano, Vernoia and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 12-05-0858.

Joseph E. Krakora, Public Defender, attorney for appellant (Rochelle Mareka Amelia Watson, Deputy Public Defender, of counsel and on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Lauren Bonfiglio, Deputy Attorney General, of counsel and on the brief).

The opinion of the court was delivered by

SUSSWEIN, J.S.C. (temporarily assigned).

This case probes the boundaries of the United States Supreme Court's landmark Sixth Amendment decision in Apprendi v. New Jersey, 530 U.S. 466 (2000). Defendant, Walek P. Dunlap, appeals from a sentence of ten years in prison for a second-degree robbery conviction imposed after violating special probation (Drug Court), N.J.S.A. 2C:35-14. Defendant argues the revocation and resentencing provisions of the special probation statute, N.J.S.A. 2C:35-14(f), permit a judge to engage in prohibited judicial fact finding. He specifically contends the imposition of a ten-year prison sentence after having already served four years on special probation is an unconstitutional extension of the statutory ten-year maximum sentence for a second-degree conviction prescribed by N.J.S.A. 2C:43-6(a)(2), contrary to Apprendi, 530 U.S. at 490. In addition to his novel constitutional arguments, defendant contends the resentencing court did not follow sentencing guidelines and imposed an excessive sentence that shocks the judicial conscience. We reject defendant's contentions and affirm his sentence.

I.

We begin by briefly summarizing the circumstances of the robbery. The victim drove to a gas station where he purchased marijuana from defendant for $20. The encounter was recorded on surveillance video. Defendant and the victim met again at the gas station about twenty minutes after the first

transaction. This time, defendant and a second individual entered the victim's car. Defendant sat in the front passenger seat while the other person occupied the rear seat. The two passengers directed the victim to drive to an apartment complex. Once parked, the rear-seat passenger grabbed the victim around the neck, put a gun to his head, and told him to close his eyes, warning, "If you move, I'll kill you." Defendant took the victim's jacket, wallet, hat, money, and car keys. The robbers then exited the vehicle and fled.

A Middlesex County Grand Jury returned a four-count indictment charging defendant with (1) first-degree robbery contrary, to N.J.S.A. 2C:15-1; (2) second-degree conspiracy to commit armed robbery, contrary to N.J.S.A. 2C:5-2; (3) second-degree unlawful possession of a firearm, contrary to N.J.S.A. 2C:39-5(b); and (4) second-degree possession of a weapon for an unlawful purpose, contrary to N.J.S.A. 2C:39-4(a).

Defendant entered a conditional guilty plea to an amended count of second-degree robbery. Defendant admitted he took the victim's possessions by threat of force. However, defendant denied using a gun. In exchange for the guilty plea, the State agreed to reduce the first-degree robbery charge to second degree[1] and to dismiss the other charges in the indictment.

---

[1] Defendant would have been ineligible for special probation had he been convicted of first-degree robbery. N.J.S.A. 2C:35-14(b)(1), (2). He also

The plea agreement presented two distinct sentencing options contingent on whether defendant was admitted to Drug Court. If defendant's application to Drug Court were denied, the plea agreement provided that the term of imprisonment would be capped at six years, subject to the requirements of the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. In the event defendant's application to Drug Court was successful, the agreement provided for an alternate sentence of ten years in prison, subject to NERA. The alternate sentence could be imposed if defendant were subsequently revoked from Drug Court in accordance with N.J.S.A. 2C:35-14(f).

The trial court adjourned sentencing to permit defendant to apply to Drug Court. At the sentencing hearing, the trial court admitted defendant into Drug Court over the State's objection. Defendant then entered a new guilty plea. The new guilty plea included the alternate sentence recommendation of ten years in prison were defendant to be revoked from Drug Court. The court explained to defendant the new guilty plea replaced and superseded the original conditional plea. The court further explained that if special probation were revoked and defendant were resentenced to prison, that sentence would

would have been ineligible if he had possessed a firearm at the time of the present offense. N.J.S.A. 2C:35-14(a)(5).

not be capped at six years. Rather, the court made clear, defendant could be resentenced to a ten-year term of imprisonment.

The sentencing court found aggravating factors three (the risk that defendant will commit another offense), six (the extent of defendant's prior criminal record and the seriousness of his convictions), and nine (the need to deter defendant and others). N.J.S.A. 2C:44-1(a)(3), (6), (9). The court found no mitigating factors. The court concluded the aggravating factors substantially outweighed the mitigating factors but not to the extent that the court would need to reject the plea agreement. The court sentenced defendant under the new guilty plea to a term of five years of special probation in Drug Court, N.J.S.A. 2C:35-14(a), with an alternate sentence of ten years in prison subject to NERA.

Defendant's performance in Drug Court was checkered with setbacks. After almost four years, the Probation Division filed a statement of charges alleging defendant had committed a series of violations of special probation falling into five distinct categories: (1) defendant tested positive for or admitted to the use of a controlled dangerous substance on six occasions; (2) defendant failed to report to his probation officer; (3) defendant was charged

with multiple new offenses;[2] (4) defendant twice failed to cooperate in examinations, tests, and counseling as directed by his probation officer; and (5) defendant failed to pay court-imposed financial obligations.

Defendant appeared before a different judge than the one who originally sentenced him and entered a guilty plea to violating conditions of special probation. Defendant admitted to all of the allegations in the statement of charges.

At a revocation-resentencing hearing, the court terminated defendant's participation in Drug Court and revoked special probation. The court considered the applicable aggravating and mitigating factors and imposed the alternate sentence of ten years in prison contemplated in the plea agreement. The sentencing court credited defendant with time served in county jail and in a residential treatment facility pursuant to Rule 3:21-8 and N.J.S.A. 2C:35-14(f)(4). He was not credited with time spent on special probation while participating in non-residential treatment. Defendant filed a timely appeal, challenging the ten-year prison sentence.

II.

Defendant presents the following contentions for our consideration:

---

[2]  While on special probation, defendant incurred new charges for simple assault, theft by unlawful taking, and obstruction of the administration of law.

POINT I

NEW JERSEY'S PROBATION REVOCATION STATUTE ALLOWS A JUDGE TO ENGAGE IN FACT FINDING THAT RESULTS IN A SENTENCE ABOVE THE STATUTORY MAXIMUM AND THEREFORE VIOLATES THE SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION.

POINT II

A REMAND FOR RESENTENCING IS REQUIRED BECAUSE THE COURT IMPOSED AN EXCESSIVE SENTENCE, FAILED TO ABIDE BY THE CRIMINAL CODE, AND SUMMARILY IMPOSED THE "ALTERNATIVE SENTENCE" WITHOUT CONDUCTING AN INDIVIDUALIZED SENTENCING ASSESSMENT.

III.

Defendant contends his ten-year prison sentence is illegal on several grounds. An illegal sentence is one that is either unconstitutional or not authorized by the New Jersey Code of Criminal Justice. State v. Zuber, 227 N.J. 422, 437 (2017) (first citing State v. Tavares, 286 N.J. Super. 610, 618 (App. Div. 1996), then citing State v. Acevedo, 205 N.J. 40, 45 (2011)); see also R. 3:21-10(b)(5) (permitting the correction of a sentence not authorized by the New Jersey Code of Criminal Justice). We first address defendant's constitutional argument.

A.

Defendant contends that N.J.S.A. 2C:35-14(f) violates Sixth Amendment rights first recognized by the United States Supreme Court in Apprendi. In State v. Hawkins, ___ N.J. Super. ___, ___ (App. Div.) (slip op. at 2), certif. denied, ___ N.J. ___ (2019), we rejected essentially the same argument defendant raises in this appeal. In that case, we affirmed the defendant's eight-year prison sentence on his second-degree conviction "without ruling directly on . . . whether the imposition of the maximum statutory custodial sentence plus special probation would be constitutionally defective." __ N.J. Super. __ (slip op. at 12).

In the case before us, defendant was in fact resentenced to the maximum statutory custodial sentence after having served several years on special probation. We therefore confront the issue left open in Hawkins. In doing so, we embrace the reasoning in Hawkins that a year on special probation undergoing outpatient treatment does not count as a year spent in prison. We further hold that Apprendi principles simply do not apply to non-custodial forms of punishment, such as special probation. We find additional support for this conclusion in the United States Supreme Court's most recent pronouncement in the line of Apprendi cases, United States v. Haymond, 588 U.S. __, 139 S. Ct. 2369 (2019).

Defendant's constitutional argument rests on two faulty premises. One relates to the specific circumstances under which his special probation was revoked. The other relates to his interpretation of what constitutes the "prescribed statutory maximum" sentence under Apprendi. We address both analytical flaws in turn.

To provide context for our review of defendant's proposed expansion of the Apprendi doctrine, we begin by summarizing Sixth Amendment principles that are now firmly rooted in our constitutional jurisprudence. In Apprendi,[3] the United States Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490; see also Ring v. Arizona, 536 U.S. 584, 602 (2002) ("[I]f a State makes an increase in a defendant's authorized

---

[3] The Court addressed a New Jersey hate-crime statute that prescribed a range of sentences greater than the range that ordinarily applies to the degree of crime for which the defendant was convicted, known as an "extended term." 530 U.S. at 468–69 (quoting N.J.S.A. 2C:44-3(e) (repealed 2001)). The Court concluded the extended-term sentencing enhancement provision impermissibly intruded on the jury's role as fact finder of all essential elements of guilt because this enhanced sentence was imposed based on the sentencing judge's finding by a preponderance of the evidence that the underlying offense was motivated by racial bias. Id. at 471, 490; see also Blakely v. Washington, 542 U.S. 296, 303–05 (2004) (applying Apprendi to a Washington statute that authorized an "exceptional sentence" upon a judge's finding of deliberate cruelty).

punishment contingent on the finding of a fact, that fact—no matter how the State labels it—must be found by a jury beyond a reasonable doubt.").

"In deciding the question of what facts must be subject to a jury finding, 'the relevant inquiry is one not of form, but of effect—does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?'" State v. Natale, 184 N.J. 458, 473 (2005) (quoting Apprendi, 530 U.S. at 494). "[I]t is unconstitutional," the Apprendi Court held, "for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed." 530 U.S. at 490 (alteration in original) (quoting Jones v. United States, 526 U.S. 227, 252–53 (1999) (Stevens, J., concurring)).

Sentencing courts still have discretion, however, to "tak[e] into consideration various factors relating both to offense and offender [when] imposing a judgment within the range prescribed by statute." Id. at 481 (emphasis omitted). The critical case-sensitive question, therefore, is whether the sentence falls within the range of sentences authorized by statute, that is, the range of sentences that can be imposed "solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Blakely, 542 U.S. at 303 (emphasis omitted).

A-4526-17T1

B.

This brings us to the first flaw in defendant's constitutional argument. In this instance, there was no judicial fact finding of the type prohibited by Apprendi. Defendant not only admitted his guilt to the underlying substantive crime, second-degree robbery, but also admitted to the facts constituting the violations of special probation that resulted in revocation and re-sentencing. But even were we to assume that judicial fact finding occurred, we still reject defendant's argument as to how Apprendi principles extend to resentencing following revocation of special probation.

We do not doubt that constitutional limitations on a court's authority to impose an original sentence also apply to a court's authority to impose a new sentence following revocation of special probation. Cf. Haymond, 588 U.S. __, 139 S. Ct. 2369 (plurality opinion) (applying Apprendi principles to imposition of a new custodial sentence following violation of supervised release under federal law). The issue presented by defendant's constitutional argument, therefore, is not whether Apprendi principles apply to post-revocation resentencing proceedings, but rather how the time spent on special probation prior to revocation should be treated for purposes of Apprendi analysis.

11

The fundament of defendant's constitutional argument is that when determining whether the statutory maximum sentence prescribed by N.J.S.A. 2C:43-6(a)(2)[4] has been exceeded we must combine the term of imprisonment imposed at re-sentencing with the period of time defendant has already served on non-custodial special probation.[5] In essence, defendant contends the Sixth

---

[4] Pursuant to N.J.S.A. 2C:43-7.2(c), every sentence for a NERA-designated crime must include a period of parole supervision. Because parole can be revoked and a defendant returned to prison to serve the remainder of the parole supervision period, it is possible that a person convicted of a NERA crime may serve more time in prison than the maximum term prescribed in N.J.S.A. 2C:43-6(a). This framework does not raise Apprendi concerns, however, because the prescribed statutory maximum for purposes of Apprendi analysis is fixed by a legislature. With respect to NERA crimes, the New Jersey Legislature has made clear that the maximum possible period of imprisonment is determined by combining the prison term authorized by N.J.S.A. 2C:43-6(a) with the parole supervision term prescribed by N.J.S.A. 2C:43-7.2(c). Furthermore, the imposition of a prescribed parole supervision term is automatic based on the degree of the NERA conviction and therefore does not rely on any judicial fact finding.

[5] In Hawkins, we noted that, "[i]f we accept the defense argument, it follows that a [violation of probation] judge may either conduct a jury trial or credit a defendant with the years served on probation against the possible maximum prison term." __ N.J. Super. at __ (slip op. at 10). We add that either of those options would constitute a significant change to the way that probation violations are addressed. See State v. Clarity, 454 N.J. Super. 603, 613 (App. Div. 2018) ("[T]he subsequent consequences of violating probation are considered part of the corrections process, not a separate prosecution and conviction."). For one thing, having juries decide violation of probation hearings would present significant logistical challenges. Furthermore, jurors would necessarily know from the outset that the defendant was convicted of an offense and placed on probation with specified conditions. Ordinarily, to avoid unfair prejudice, jurors are not told about a defendant's prior conviction

12

Amendment requires courts to treat imprisonment and non-custodial probation as equal and indistinguishable for purposes of Apprendi analysis.

This brings us to the second faulty premise on which defendant's constitutional argument relies. We reject the notion that time spent in the community on non-custodial special probation is functionally equivalent to time spent incarcerated. See Hawkins, __ N.J. Super. at __ (slip op. at 11) ("[W]e do not accept that a year of probation is equal to a year of incarceration, or that eight years in prison plus five years of probation is greater than ten years in prison . . . ."). Non-custodial probation is qualitatively different from incarceration, as authoritative precedents clearly establish.

---

before deciding whether he or she committed an unlawful act. See State v. Ragland, 105 N.J. 189, 193 (1986) (requiring bifurcation when a defendant is charged with unlawful possession of a weapon and possession by a convicted felon).

The other option presented in Hawkins—awarding prison credit for the entire time spent on probation—would progressively reduce a probationer's incentive to comply with the terms and conditions of probation. At some point, revocation of probation might result in no more than the defendant being resentenced to time served. Relatedly, knowing that delay reduces the quantum of imprisonment that might be imposed at resentencing, probation officers and courts might be less willing to defer the filing of violation of probation charges for less serious violations and during the early stages of the probationary period. In this case, defendant was given numerous bites at the rehabilitation apple, accumulating at least eleven distinct violations over the span of several years before the Probation Division filed a formal statement of charges, initiating the revocation process.

In State v. Evers, for example, we concluded that "[p]robation is not the same as incarceration," and therefore the "defendant [was] not entitled to credit for time served on probation because his probation was not as restrictive and confining as a custodial sentence." 368 N.J. Super. 159, 173 (App. Div. 2004); see also United States v. Gordon, 961 F.2d 426, 432–33 (3d Cir. 1992) ("[P]robation time cannot be converted into prison time with any mathematical precision."); Clarity, 454 N.J. Super. at 606, 611 (holding probation was not confinement for purposes of determining, under the persistent offender statute, N.J.S.A. 2C:44-3(a), whether the defendant had been released from confinement within ten years preceding the instant offense).

We see no reason to retreat from these precedents and hold for the first time that a day serving non-custodial special probation while undergoing outpatient treatment is equivalent punishment to a day of incarceration. In this instance, the Legislature has explicitly set forth when and to what extent a defendant is entitled to credit against a prison sentence imposed following revocation of special probation. N.J.S.A. 2C:35-14(f)(4) provides in pertinent part:

> If the court determines or is required pursuant to any other provision of this chapter or any other law to impose a term of imprisonment, the person shall receive credit for any time served in custody pursuant to N.J.S.A. 2C:45-1 or while awaiting placement in a treatment facility pursuant to [N.J.S.A. 2C:35-14], and

14

for each day during which the person satisfactorily complied with the terms and conditions of special probation <u>while committed pursuant to [N.J.S.A. 2C:35-14] to a residential treatment facility</u>.

[(Emphases added).]

It is clear from this provision that the Legislature did not intend to award credit for the entirety of the time spent on special probation. As we have already noted, under <u>Apprendi</u>, it is the province of a legislature by statute to determine the maximum sentence that may be imposed based on a conviction. In <u>Hawkins</u>, we explained that,

> [t]he statutory scheme delineates that the maximum custodial sentence for a second-degree crime is ten years in prison, unless a defendant applies for and is accepted into special Drug Court probation, in which case he may receive a sentence of five years of Drug Court with the risk of spending ten years in prison if he violates that special probation, with credit given for time spent in jail or inpatient treatment.
>
> [__ N.J. Super. at __ (slip op. at 11).]

Applying that understanding of the statutory framework to the case before us, the trial court resentenced defendant on his second-degree robbery conviction to the maximum prison term authorized by N.J.S.A. 2C:43-6(a)(2) but not more than that maximum.

In reaching this conclusion, we do not mean to suggest that a probationary sentence is not a form of punishment. The point, rather, is that

non-custodial punishment is substantively different from incarceration. We read <u>Apprendi</u> and its progeny to focus solely on the latter form of punishment, not the former.

We therefore hold that when determining whether the "prescribed statutory maximum" has been exceeded for purposes of <u>Apprendi</u> analysis, we look to the length of time the defendant is incarcerated, not to the length of time he or she serves on non-custodial probation. We note in this regard that the United States Supreme Court has never held that non-custodial sentences raise <u>Apprendi</u> concerns. In the absence of explicit instruction from higher courts, and especially considering the significant consequences were we to accept defendant's extrapolation of <u>Apprendi</u>, <u>see</u> <u>supra</u> note 5, we decline to untether the <u>Apprendi</u> doctrine from its historical moorings and expand it to apply to non-custodial forms of punishment.

The United States Supreme Court's recent decision in <u>Haymond</u> supports this conclusion. In that case, the Court confronted the application of <u>Apprendi</u> principles in the context of federal supervised release. A jury found the defendant guilty of possessing child pornography. 588 U.S. __, 139 S. Ct. at 2373 (plurality opinion). Federal law authorized the judge to impose a prison term of "between zero and ten years." <u>Ibid.</u> (citing 18 U.S.C. § 2252(b)(2)). Based on the defendant's criminal background and characteristics, the judge

sentenced the defendant to thirty-eight months in prison, followed by ten years of supervised release. Ibid.

Haymond completed the custodial portion of his sentence and was on supervised release when federal authorities discovered child pornography on his cellphone and computers. Id. at 2374. At a hearing, a judge found by a preponderance of the evidence that Haymond had violated a condition of supervised release. Ibid. The question then turned to the appropriate sentence in response to the violation. Federal law ordinarily would have permitted the judge to sentence Haymond "to between zero and two additional years in prison." Ibid. (citing 18 U.S.C. § 3583(e)(3)). However,

> [u]nder [18 U.S.C.] § 3583(k), . . . if a judge finds by a preponderance of the evidence that a defendant on supervised release committed one of several enumerated offenses, including the possession of child pornography, the judge must impose an additional prison term of at least five years and up to life without regard to the length of the prison term authorized for the defendant's initial crime of conviction.
>
> [Ibid.]

The judge thus was required to impose a minimum prison sentence of five years for the violation of supervised release, even though the defendant's original conviction under § 2252(b)(2) did not prescribe a minimum term of imprisonment. Id. at 2375.

A sharply divided Court struck down § 3583(k). A four-justice plurality held § 3583(k) violated the court's decision in Alleyne v. United States, 570 U.S. 99 (2013), which held "'Apprendi applies with equal force to facts increasing the mandatory minimum' as it does to facts increasing the statutory maximum penalty." Haymond, 588 U.S. __, 139 S. Ct. at 2378 (quoting Alleyne, 570 U.S. at 112). Applying that principle, the Haymond plurality deemed § 3583(k) unconstitutional because judicial fact finding triggered a mandatory sentence of at least five years in prison when, on the basis of the facts found by the jury, the defendant was subject to as little as no years in prison. Ibid.

The circumstances in Haymond that prompted the Court to find an Apprendi violation are clearly distinguishable from the case before us. In stark contrast to § 3583(k), N.J.S.A. 2C:35-14(f) does not prescribe a new mandatory minimum sentence. Rather, our statute incorporates by reference the minimum and maximum sentences that could have been imposed originally based on defendant's conviction. Specifically, N.J.S.A. 2C:35-14(f)(4) provides that,

> [i]f the court permanently revokes the [defendant's] special probation pursuant to this subsection, the court shall impose any sentence that might have been imposed, or that would have been required to be imposed, originally for the offense for which the person was convicted or adjudicated delinquent.

Importantly, the Haymond plurality distinguished the defective federal supervised release statute at issue before it from probation and parole, which it noted "have usually been understood to comport with the Fifth and Sixth Amendments." Haymond, 588 U.S. __, 139 S. Ct. at 2381 (plurality opinion). The plurality explained that probation and parole comply with Apprendi principles because, upon finding a violation, "a judge generally could sentence the defendant to serve only the remaining prison term authorized by statute for his [or her] original crime of conviction." Id. at 2382. "Thus, a judge could not imprison a defendant for any longer than the jury's factual findings allowed—a result entirely harmonious with the Fifth and Sixth Amendments." Ibid. New Jersey's special probation revocation law is just the sort of traditional probation statute the Haymond plurality deemed "to comport with the Fifth and Sixth Amendments." Id. at 2381.

It is also noteworthy that when describing the maximum allowable sentence following a violation of supervised release, the Haymond plurality made no mention of the non-custodial portion of the sentence. The plurality opinion, in other words, does not pronounce, or even intimate, that as a matter of constitutional imperative, the time a defendant has already spent out of prison on supervised release must be added to the custodial sentence for

purposes of determining whether the prescribed statutory maximum has been exceeded.

Under federal law, the period of incarceration and ensuing period of supervised release are deemed to be "distinct aspects" of punishment. United States v. Work, 409 F.3d 484, 489 (1st Cir. 2005). Accordingly, "courts routinely have held that the combined sentence of years of imprisonment plus years of supervised release may exceed the statutory maximum number of years of imprisonment authorized by the substantive statute applicable to the crime of conviction." Ibid.

If defendant's expansive interpretation of Apprendi were correct, the federal statutory scheme upheld in Work and revisited in Haymond would run afoul of the Sixth Amendment unless time spent on supervised release before revocation were treated the same as time spent in prison. However, § 3583(e)(3) expressly provides to the contrary that the new sentence following revocation of supervised release is imposed "without credit for time previously served on postrelease supervision."[6] It bears emphasis that the plurality made no mention of any constitutional concern with this statutory feature, even as

---

[6] We note the plurality decision reproduces the "pertinent part" of § 3583(e)(3), including the provision that expressly prohibits awarding credit for time previously served on postrelease supervision. 588 U.S. at __ n.1, 139 S. Ct. at 2374 n.1.

the Court struck down a specific mandatory minimum sentencing provision of that statute on Apprendi grounds.  The failure to allude to any constitutional problem with the statutory feature that treats time on supervised release so differently from time spent in prison is telling.  In our view this confirms that the Court never contemplated that Apprendi principles might possibly extend to forms of punishment other than minimum and maximum terms of imprisonment.

We find further support for our conclusion that the Supreme Court never meant for Apprendi to apply to non-custodial forms of punishment in the plurality's response to concerns expressed by the dissenting Justices.  The dissent complained, "[t]he plurality opinion appears to have been carefully crafted for the purpose of laying the groundwork for later decisions of much broader scope."  588 U.S. at __, 139 S. Ct. at 2386 (Alito, J., dissenting).  The plurality responded to those concerns about the future expansion of the Apprendi doctrine, noting:

> Besides, even if our opinion could be read to cast doubts on § 3583(e) and its consistency with Apprendi, the practical consequences of a holding to that effect would not come close to fulfilling the dissent's apocalyptic prophecy.  In most cases (including this one), combining a defendant's initial and post-revocation sentences issued under § 3583(e) will not yield a term of imprisonment that exceeds the statutory maximum term of imprisonment the jury has authorized for the original crime of conviction.

21

[588 U.S. __, 139 S. Ct. at 2384 (plurality opinion) (emphases added).]

Notably, in this pointed discussion of the potential breadth of <u>Apprendi</u>'s reach, the plurality referred to the combination of two periods of incarceration, not to the combination of a period of incarceration and a period of supervised release when describing a composite sentence that might conceivably exceed the "statutory maximum." The point simply is that even as the plurality and dissenting Justices argued vociferously about the prospects for expanding the <u>Apprendi</u> doctrine, no one raised the possibility of an expansion of the type and to the degree defendant urges us to accept in this appeal.

In sum, we read the <u>Haymond</u> plurality and dissenting opinions to be consistent with our conclusion that <u>Apprendi</u>, <u>Blakely</u>, <u>Alleyne</u>, and <u>Ring</u> focus exclusively on prison sentences and simply do not apply to non-custodial probationary sentences.

IV.

We turn next to defendant's more traditional sentencing arguments. He contends the court failed to comply with sentencing guidelines and imposed an excessive sentence that shocks the judicial conscience. Defendant argues the court summarily imposed the sentence contemplated in the plea agreement without conducting an individualized assessment of defendant's crime and his

personal background. We have reviewed the record in light of the applicable legal principles and conclude that contrary to defendant's contentions, the trial court conducted a thorough and thoughtful analysis of all relevant circumstances pertaining both to the offense and his personal background.

Sentencing determinations are entitled to deference. State v. Fuentes, 217 N.J. 57, 70 (2014). Appellate courts are not to substitute their judgment for the trial court's judgment simply because the appellate court would have reached a different result. State v. Lawless, 214 N.J. 594, 606 (2013).

> The appellate court must affirm the sentence unless (1) the sentencing guidelines were violated; (2) the aggravating and mitigating factors found by the sentencing court were not based upon competent and credible evidence in the record; or (3) "the application of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience."
>
> [Fuentes, 217 N.J. at 70 (alteration in original) (quoting State v. Roth, 95 N.J. 334, 364–65 (1984)).]

Furthermore, "[a] sentence imposed pursuant to a plea agreement is presumed to be reasonable because a defendant voluntarily '[waived] . . . his right to a trial in return for the reduction or dismissal of certain charges, recommendations as to sentence and the like.'" Id. at 70–71 (alteration in original) (quoting State v. Davis, 175 N.J. Super. 130, 140 (App. Div. 1980)).

The record before us confirms that the resentencing judge reviewed the facts from the presentence report and defendant's plea colloquy. He noted the evidence in the record that a gun was involved in the robbery but accepted defendant's statement that he did not possess the weapon. He considered defendant's employment and educational status, as well as defendant's mental health and history of substance abuse. The sentencing judge also reviewed defendant's criminal history of juvenile adjudications.

The judge's assessment of the relevant circumstances led him to find aggravating factors three (risk of recidivism) and nine (need to deter). N.J.S.A. 2C:44-1(a)(3), (9). The sentencing judge concluded with respect to aggravating factor three that there was a strong risk defendant would reoffend until he successfully managed his substance abuse. He found no mitigating factors.

The court considered but ultimately rejected defendant's argument for mitigating factor four (substantial grounds tending to excuse or justify defendant's conduct though failing to establish a defense). N.J.S.A. 2C:44-1(b)(4). Defendant claimed he was under the influence of Percocet, cocaine, beer, and marijuana at the time of the offense. The court concluded there was insufficient evidence establishing the degree to which defendant was under the influence during the robbery and to what extent that may have excused his

conduct. See Roth, 95 N.J. at 364 (requiring any factors, aggravating or mitigating, found by the court to be supported by competent and credible evidence). Additionally, the court considered and ultimately rejected mitigating factor ten (likelihood of responding positively to probation) in view of defendant's violations of special probation. N.J.S.A. 2C:44-1(b)(10). Because there were no mitigating factors, the court found the aggravating factors substantially outweighed the mitigating factors.

The record clearly shows that the sentencing judge did not summarily impose the sentence contemplated by the plea agreement, as defendant now asserts. Rather, the sentencing judge noted only that the plea agreement was entitled to a presumption of reasonableness. That observation comports with our Supreme Court's holding in Fuentes, 217 N.J. at 70. Having found that the aggravating factors substantially outweighed the mitigating factors, the court concluded it was in the interest of justice to impose the recommended sentence.

Defendant argues the resentencing court improperly considered defendant's addiction in finding aggravating factor three, contrary to State v. Baylass, 114 N.J. 169, 179 (1980). Defendant also contends the court improperly considered defendant's violations of probation as an aggravating factor, again contrary to Baylass.

25

We disagree with defendant on both counts. His arguments on appeal ignore well-recognized differences between special probation and regular probation. In State v. Bishop, after reviewing the legislative history of N.J.S.A. 2C:35-14 and case law explaining the sentencing procedures for regular probation, we determined the Legislature "inten[ded] to provide a separate [violation of probation] resentencing regime for special probation than that which had previously existed and continues to exist for regular probation." 429 N.J. Super. 533, 547 (App. Div. 2013). We concluded the analytical framework from Baylass "does not apply to prison-bound offenders sentenced to special probation." Id. at 548. The statute authorizing resentencing after revocation of special probation makes clear that while a judge is only permitted to "impose any sentence that might have been imposed" originally, the court must "conduct a de novo review of any aggravating and mitigating factors present at the time of both original sentencing and resentencing." N.J.S.A. 2C:35-14(f)(4) (emphasis added). Accordingly, it was entirely appropriate for the sentencing judge to consider defendant's failure to take advantage of Drug Court to address his addiction.

We conclude by noting that the court expressed sadness in revoking defendant's participation in Drug Court. We concur in that sentiment. Drug Court is an extraordinary rehabilitative opportunity for defendants who

26

otherwise face a presumption of imprisonment. <u>Hawkins</u>, __ N.J. Super. __ (slip op. at 12). It is unfortunate that defendant failed to take advantage of that opportunity.

In sum, the sentencing judge conducted a comprehensive review of all relevant aggravating and mitigating circumstances and acted well within his discretion in imposing the sentence recommended in the plea agreement. Although defendant received the maximum prison term authorized by that agreement and by law, his sentence is reasonable and does not shock the judicial conscience. <u>Roth</u>, 95 N.J. at 364–65.

To the extent we have not already addressed them, any other arguments raised by defendant lack sufficient merit to warrant discussion in this written opinion. <u>Rule</u> 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION