**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2828-18T4

STATE OF NEW JERSEY,

    Plaintiff-Appellant/
    Cross-Respondent,

v.

AMY LOCANE, a/k/a
AMY BOVENIZER, AMY
LOCANE-BOVENIZER,

    Defendant-Respondent/
    Cross-Appellant.

_____

Argued November 21, 2019 – Decided July 22, 2020

Before Judges Alvarez, Suter and DeAlmeida.

On appeal from the Superior Court of New Jersey, Law Division, Somerset County, Indictment No. 10-12-0770.

Matthew Murphy, Assistant Prosecutor, argued the cause for appellant/cross-respondent (Michael H. Robertson, Somerset County Prosecutor, attorney; Matthew Murphy, on the briefs).

James R. Wronko argued the cause for respondent/cross-appellant (Wronko Loewen Benucci, attorneys; James R. Wronko, of counsel and on the briefs; Gilbert G. Miller, on the briefs).

PER CURIAM

This opinion addresses the unique circumstance, truly sui generis, of a defendant who must be resentenced a fourth time because the first three occasions resulted in either illegal sentences or sentences imposed outside of the New Jersey Criminal Code's sentencing scheme.

To summarize, defendant Amy Locane was convicted by a jury of second-degree vehicular homicide, N.J.S.A. 2C:11-5(a), a lesser offense; and third-degree assault by auto, N.J.S.A. 2C:12-1(c)(2). The judge convicted defendant of related motor vehicle offenses. The State appealed the judge's sentence, defendant cross-appealed, and this court remanded for resentencing. State v. Locane, No. A-2728-12 (App. Div. July 22, 2016) (Locane I).

On remand the judge, due to a change in the law, downgraded the assault by auto offense and resentenced defendant to eighteen months state prison concurrent to the same three-year sentence he first imposed for the vehicular homicide. We again vacated the sentence and remanded for resentencing, finding the judge's application of aggravating and mitigating factors contrary to the sentencing scheme found in our Code. State v. Locane, 454 N.J. Super. 98

(App. Div. 2018) (Locane II). We also directed a new judge to conduct the resentencing. Id. at 108.

The new sentencing judge sentenced defendant to a five-year term. The State appeals on the basis that the judge's analysis did not comply with the Code, and that his discussion of individual aggravating and mitigating factors did not comply with our directives on appeal. Defendant cross-appeals, arguing that neither the second nor this third appeal by the State are tenable because of principles of double jeopardy.

The judge who most recently sentenced defendant employed a methodology all his own. In the process, he ignored our mandate on remand regarding certain aggravating and mitigating factors. Finding in this unique case that double jeopardy principles do not bar a final proceeding, we thus vacate the sentence and remand for a new sentence to be imposed. During that proceeding, the sentencing judge must apply the sentencing analysis found in our Code, not his own, and relevant precedents. He must also apply the findings we made in Locane II regarding factors other than defendant's personal circumstances, which have changed over time.

This is the third occasion we have addressed defendant's sentence. We vacate this sentence and remand.

The facts are as stated in the two prior opinions. We reiterate only that at the time of the accident, the State's expert testified that defendant's blood alcohol content was .23 percent. Defendant's excessive speed was a contributing cause to the collision, which resulted in the death of one victim, and the severe injuries inflicted on the other.

Over the course of the most recent proceeding, the judge, although repeatedly stating he would not stray into In re Mathesius[1] territory while discussing our earlier decisions in the matter, opined that, "assuming either a different appellate panel or a federal judge, [defendant] may have more than a puncher's chance of success" on an issue he disagreed with, which was our ruling regarding double jeopardy. The judge reviewed each aggravating and mitigating factor, disagreeing both with the first judge's analysis, as well as that of the appellate panel.

The judge explained to those gathered in the courtroom that he had spent over 100 hours studying the complete trial record. The judge continued: "Rarely, in my experience, can I remember a case which reflects from beginning to end such a lack of consistent judgment by all parties involved. It seems as if

---

[1] 188 N.J. 496 (2006) (holding that a trial judge's openly critical comments of an Appellate Division judge's opinion violated Canon 1 of the Code of Judicial Conduct).

anyone who touched this case made mistakes." The judge included in his criticism, extraneous to a resentence, "the scope" of the indictment, plea negotiations, the conduct of the trial, and the appeals—in other words, the prosecutor's office, defense counsel, the trial judge, and our court as well.

Before he actually imposed sentence, the judge explained at some length that prior to coming to the bench, he was mentored by a federal court judge who explained to him the "yin and yang" of sentencing. He explained that this judge had taught him that a lawyer needed to "ascertain what he called the indicia of reliability," and expressed his astonishment at "how many lawyers do not understand that and who try cases based on what people say." The judge said that mentor explained to him that there are three factors key to any sentencing, namely, aggravating factors one and two, and mitigating factor seven.

Based on the mentor judge's teachings, one must determine the extent of a defendant's record in order to "give[] context to the second[-]degree crime." In the judge's view, if you do not do that, and merely "formulaically apply a specific sentence to a specific crime, you're violating the law. You have to look at those two before you go anywhere else. You look at those two for the context in which you have to look at it."

The judge moved on to this case, finding mitigating factor seven applied and giving it "great weight because it gives context to the offense." He then described in detail a "second [unrelated] case" that he said "came before this [c]ourt[,]" presumably referring to himself. He claimed that in that case, the defendant driver was not only intoxicated, but listening to music on his phone, and talking to a drunk girlfriend, when he drove through a red light. That defendant had three prior DWIs. The judge opined that vehicular homicide could not be equated with this one even though both had inflicted terrible pain to the victims' families. To sentence the two defendants in the same fashion "would deprecate the sentence given to that three-time loser."[2] The judge then criticized the State for requesting a nine-year sentence be imposed on defendant.

The judge also stated that he did not consider himself "bound by the Appellate Division's analysis of aggravating and mitigating factors." Beginning with our discussion of aggravating factor three, the risk of reoffense, we had analogized the extent of defendant's intoxication, almost three times the legal limit, to the substantial quantity of drugs in the defendant's possession in State v. Varona, 242 N.J. Super. 474, 491 (App. Div. 1990). The judge reiterated that,

---

[2] After the sentencing hearing, the judge said the reference to the other drunken driving sentence was merely hypothetical, not to an actual case.

"[k]eeping in mind In re Mathesius, this analysis is, in my opinion with all due respect, flawed because it equates two separate and distinct components of the human experience, greed versus addiction."

The judge also said that to find the extent of defendant's intoxication at the time of the incident to be consequential "flies in the face of all that the legislature, the Courts and the public are trying to accomplish with our drug court program along with a host of other societal efforts to combat the scourge of opiates and alcohol in our society." Thus, he found that the extent of defendant's intoxication at the time of the incident could not be taken into account in assessing aggravating factor three, the risk of reoffense. The judge said that he would have originally found very little weight in aggravating factor three and accorded it even less weight in this proceeding, thus making a new finding.

In a fashion similar to the first judge, whose analysis he referenced throughout, this judge found that individual deterrence was meaningless in this case because of defendant's rehabilitation efforts. Nor did he agree with our prior finding that the general deterrence aspect of aggravating factor nine should be given great weight because of the nature of alcohol-fueled vehicular

A-2828-18T4

homicide. The judge would have given it "moderate weight" had he been the original sentencing judge, and he gave it the same weight here on resentencing.

During the sentence hearing, the judge also volunteered that his area of expertise prior to his appointment to the judiciary was in the insurance field. He therefore considered his disagreement with our conclusion as to mitigating factor six, restitution, to be "more [than] an academic exercise, given my background [in insurance]." We had said in our prior opinion that restitution serves a vital goal, but discounted that factor in this case because it involved a death, and payments by insurance companies, not by defendant personally. The judge considered our decision improper because it was not unheard of for carriers to seek contribution or even ultimate reimbursement by the liable party, although the record did not indicate either occurred in this case. The judge also mentioned that in his private practice he had secured multiple subrogation judgments in which individuals were required to make payments over years. The record did not indicate that occurred here. Therefore, he said, had he been doing the sentencing analysis originally, he would have found mitigating factor six, but would not have given it any weight.

With regard to mitigating factors eight and nine, the judge reviewed letters written in support of defendant's work in the recovery community, and gave

them more weight now than he would have had he been the sentencing judge in 2013. He concluded that they should be given great weight since defendant had demonstrated a commitment to sobriety to a greater extent than at the original sentence, and said he would give the two factors "some little greater weight."

With regard to mitigating factor eleven, he would have accorded great weight to that factor during the original sentence, but did not view himself bound by our discussion. Repeating that he did not wish to stray into In re Mathesius "territory," he nonetheless wanted to make a record of his disagreement on the issue. He reviewed a letter from defendant's former husband, the children's father with whom they reside, in which the father disputed facts in the record at the time of the earlier proceeding. The judge said that one child's affliction of Crohn's disease made mitigating factor eleven "idiosyncratic" to defendant. The judge also stated that to have to serve a sentence would pose additional hardship to defendant because she had been a model prisoner, had already been in prison once for these crimes, and considered those "idiosyncratic facts." Therefore, he gave additional weight to the factor.

The judge also volunteered that had he sentenced defendant initially, he would have imposed six years of imprisonment, but that after reviewing the

information that developed between the original sentence date and this date, he had decided to impose a five-year sentence.

In closing, the judge said that

> [t]he yin and the yang suggest to the [c]ourt now that -- as I -- as it suggested to the [c]ourt -- would have -- would have suggested to the [c]ourt originally, that this is not a case in which a [s]entencing [c]ourt should move upward off the midrange of the second[-]degree crime, taking those factors in context.

The judge concluded the mitigating factors preponderated. He believed imposing a higher sentence "would have been an exercise in bad judgment, just like all the others." He therefore sentenced defendant to five years in state prison subject to the No Early Release Act, N.J.S.A. 2C:43-7.2.

Once informed by defense counsel that they would be filing an appeal based on defendant's "nine years of exemplary behavior," he stayed the sentence because, he said, she was not a flight risk. The prosecutor contended that there was no substantial question of law, and that therefore the sentence should not be stayed. The judge disagreed. He said he believed the Supreme Court denied certification on defendant's earlier appeal "because the matter wasn't final. It hadn't been sentenced pursuant to the opinion of the Appellate Division."

The State appeals, raising the following issues:

A-2828-18T4

POINT ONE
THIS APPELLATE COURT MUST VACATE [the judge's] ORDER STAYING DEFENDANT'S SENTENCE AND GRANTING ROR/BAIL PENDING APPEAL BECAUSE THE TRIAL JUDGE DISREGARDED THE APPELLATE DIVISION'S UNAMBIGUOUS REMAND ORDER TO SENTENCE DEFENDANT IN ACCORD WITH ITS DECISION.

RES JUDICATA AND THE 'LAW OF THE CASE' BARRED THE TRIAL COURT FROM RE-LITIGATING DEFENDANT'S DOUBLE JEOPARDY ARGUMENTS AND ENTERING FINDINGS THAT CONTRADICTED THE APPELLATE DIVISION'S DECISION.

TRIAL JUDGE[S] ARE UNDER A PEREMPTORY DUTY TO COMPLY WITH THE APPELLATE DIVISION'S REMAND ORDER PRECISELY AS IT WAS WRITTEN REGARDLESS OF [THEIR OPINIONS].

POINT TWO
THE APPELLATE DIVISION MUST VACATE DEFENDANT'S SENTENCE BECAUSE THE TRIAL COURT DISREGARDED THE APPELLATE DIVISION'S UNAMBIGUOUS REMAND ORDER TO SENTENCE DEFENDANT IN ACCORDANCE WITH ITS DECISION.

[The judge] WAS UNDER A PEREMPTORY DUTY TO ACCEPT AND APPLY THE APPELLATE PANEL'S FINDINGS AND CONCLUSIONS ON THE AGGRAVATING AND MITIGATING SENTENCING FACTORS. THE TRIAL COURT'S FAILURE TO COMPLY WITH THE APPELLATE

11

DIVISION'S FINDINGS AND SENTENCING INSTRUCTIONS MANDATES REVERSAL.

POINT THREE
THE APPELLATE DIVISION MUST VACATE DEFENDANT'S SENTENCE BECAUSE THE TRIAL COURT COMMITTED PLAIN ERROR BY ESTABLISH[ING] THE BASE TERM OF DEFENDANT'S SENTENCE BY 'THE YIN AND THE YANG'.

POINT FOUR
THE APPELLATE DIVISION MUST VACATE DEFENDANT'S SENTENCE BECAUSE THE TRIAL COURT COMMITTED PLAIN ERROR BY SETTING THE BASE TERM BY COMPARING DEFENDANT'S CRIME AGAINST AN IMPROVISATION.

Defendant cross-appeals, raising the following issues:

POINT I
THE TRIAL COURT ERRED BY DENYING MS. LOCANE'S MOTION TO BAR RE-SENTENCING SINCE IT VIOLATED WELL ESTABLISHED PRINCIPLES OF DOUBLE JEOPARDY.

A
SINCE MS. LOCANE COMPLETED HER ENTIRE SENTENCE INCLUDING PAROLE, PRINCIPLES OF DOUBLE JEOPARDY PRECLUDE HER FROM BEING RE-SENTENCED.

B
SINCE THE TRIAL COURT DID NOT COMPLY WITH R. 2:9-3 AND AS MS. LOCANE SERVED HER ENTIRE JAIL SENTENCE, DOUBLE JEOPARDY PRINCIPLES BAR RE-SENTENCING.

POINT II
THE STATE'S APPEAL MUST BE DISMISSED
SINCE IT FAILS TO SET FORTH ANY
RECOGNIZED BASIS UPON WHICH TO APPEAL A
SENTENCE IMPOSED WITHIN THE RANGE SET
FORTH FOR THE OFFENSE IN QUESTION.

We combine the two discussions.

I.

Defendant asserts that the February 15, 2019 resentencing hearing violates the double jeopardy clauses of the New Jersey and United States Constitutions. The State responds that the issue has already been disposed of on appeal. The matter was decided in our prior opinion, and thus pursuant to the law of the case doctrine, it is not subject to relitigation at this time. See State v. K.P.S., 221 N.J. 266, 277-82 (2015).

Defendant now argues that since she has completed the parole aspect of her sentence, the third sentencing hearing should not have occurred. A decision based on the law of the case is discretionary. See id. at 276.

In the previous appeal, defendant did not claim that she never waived double jeopardy—doing so for the first time in the unsuccessful petition for certification she filed with the New Jersey Supreme Court. She now contends that she never waived double jeopardy protection after she was sentenced to the original downgraded term in 2013, and that since she has now completed her

entire sentence, double jeopardy bars any further proceeding. We previously held that defendant waived double jeopardy protection by electing to begin service of her sentence pending the State's appeal. See Locane II, 454 N.J. Super. at 118.

The protection against double jeopardy is both a common law and constitutional right. State v. Schubert, 212 N.J. 295, 304 (2012). It is enshrined in the Fifth Amendment to the United States Constitution and Article I, Paragraph 11 of the New Jersey Constitution. Ibid. "There is no distinction in the protections afforded by one provision as opposed to the other, and thus '[o]ur State's double-jeopardy jurisprudence mirrors federal law.'" Ibid. (alteration in original) (quoting State v. Kelly, 201 N.J. 471, 484 (2010)). Double jeopardy protects defendants from prosecution for the same offense after an acquittal or conviction, and precludes the imposition of multiple punishments for the same offense. Ibid.

Regarding the prohibition against multiple punishments for the same offense, the aspect of double jeopardy defendant raises, the analysis centers upon a defendant's expectation of finality in a sentencing decision. State v. Sanders, 107 N.J. 609, 619 (1987); see also United States v. DiFrancesco, 449 U.S. 117, 136 (1980). Typically, finality interests arise after the "final judgment

14

and commencement of the sentence." State v. Veney, 327 N.J. Super. 458, 461 (App. Div. 2000); see State v. Ryan, 86 N.J. 1, 10 (1981) ("[J]eopardy attaches as soon as execution of the sentence commences."). If jeopardy attaches, it "prohibits the increase of the term imposed in a discretionary sentence." Veney, 327 N.J. Super. at 461.

By statute, the State may appeal a downgraded sentence in certain circumstances. Any sentence appealable under that provision is not final for ten days to allow the State time to appeal without jeopardy attaching. N.J.S.A. 2C:44-1(f)(2). "Defendants are charged with notice of the terms of this provision." Sanders, 107 N.J. at 620. The Court Rules provide that, upon the State's filing an appeal made pursuant to N.J.S.A. 2C:44-1(f)(2), an automatic stay of sentence is imposed, and bail "shall be established as appropriate under the circumstances." R. 2:9-3(c). Critically, a defendant may "elect to execute a sentence stayed by the State's appeal but such election shall constitute a waiver of the right to challenge any sentence on the ground that execution has commenced." Ibid. These provisions were added to the Court Rules specifically to avoid double jeopardy issues potentially created by the implementation of N.J.S.A. 2C:44-1(f)(2). State v. Farr, 183 N.J. Super. 463, 471 n.1 (App. Div. 1982).

In State v. Evers, 368 N.J. Super. 159 (App. Div. 2004), the sentencing judge downgraded an offense and, finding that the defendant had overcome the presumption of incarceration, sentenced him to five years' probation and a suspended six-month custodial sentence. Id. at 163. The Supreme Court held that the defendant had failed to overcome the presumption of imprisonment and remanded for resentencing. Ibid. Following the remand, the defendant was sentenced to a custodial term of three years on one count and a concurrent twelve-month sentence on the remaining counts. Id. at 167.

Evers argued that double jeopardy prevented resentencing because the State did not affirmatively file for a stay pending appeal within the ten-day statutory window, and because he had already begun to serve his probationary sentence. Id. at 169. This court found that the argument lacked merit. Ibid. Because the State appealed the sentence within the ten-day statutory window, the sentence never became final by operation of N.J.S.A. 2C:44-1(f)(2) and Rule 2:9-3(c). Ibid. Because the "initial sentence was not final during the ten-day period following its imposition, N.J.S.A. 2C:44–1f(2), it lacked finality after the ten-day period because of the Rule 2:9-3[(c)]³ stay." Ibid. Thus, "a final

---

³ Prior to a 2018 amendment, the current version of Rule 2:9-3(c) was located at 2:9-3(d). The previous version of the Rule was cited in the opinion.

sentence never became effective, [and] double jeopardy never attached." Ibid. The defendant was "charged with notice of the stay and had no reasonable expectation of finality." Ibid. The defendant's election to start his probationary sentence constituted a waiver of his right to later challenge a sentence increase on double jeopardy grounds. Ibid.

The analysis here mirrors that set forth in Evers. Here, within days of the court's first sentencing decision, while the automatic ten-day stay of sentence was in place, the State filed a notice of appeal challenging the sentence, captioned "NOTICE OF SENTENCING APPEAL," and addressed to defendant's trial counsel and the trial court. The notice cited N.J.S.A. 2C:44-1(f)(2), and made clear to defendant and her counsel that the State sought an increase in the sentence:

> The State is appealing defendant's sentence as a matter of right pursuant to N.J.S.A. 2C:44-1f(2). Pursuant to the above-mentioned statute, defendant's sentence will not become final for ten (10) days pending the State's appeal of the sentence. The State is filing this appeal within the ten (10) day filing period.

Thus, defendant and her counsel were aware of the ten-day stay and that her sentence could increase upon the State's filing the notice of appeal, but she nonetheless elected to begin serving her sentence, waiving any double jeopardy

A-2828-18T4

claim as set forth in Rule 2:9-3(c). Thus, like the defendant in Evers, she had no legitimate expectation of finality in her sentence, so jeopardy did not attach.

Defendant's arguments to the contrary lack merit. She first claims this court erred in Locane II by finding a waiver based on her decision not to challenge the State's application to revoke bail pending sentencing. However, the finding of waiver was not premised just upon the fact that she had surrendered to county jail before the original sentencing hearing. Rather, the analysis focused on her reasonable expectation of finality after the sentence, pursuant to Sanders and DiFrancesco. In Locane II, this court held that, "[b]ecause defendant turned herself in before she was sentenced, and never sought release pending appeal, she has waived the right to challenge any increase on remand." 454 N.J. at 118 (emphasis added). Because defendant had "always known that her sentence was subject to correction," she had "no reasonable expectation of finality in her sentence." Ibid.

As we have said, defendant first challenged the notion that she waived double jeopardy protection in her Supreme Court petition following Locane II. There, she argued that Rule 2:9-3(c) did not preclude her double jeopardy claim. But in that petition she did not claim she was unaware of the State's challenge to her initial sentence or the ten-day stay of sentence. Thus, as acknowledged

18

by defendant's counsel in the previous appeal, at all times during the pendency of this appeal defendant knew the State sought an increase in the sentence. Defendant had no expectation of finality.

Furthermore, the record does not support defendant's claim that she was not advised of the State's appeal. Shortly after the State filed notice of the sentencing appeal on February 28, 2013, defendant filed a notice of cross-appeal. That certainly would seem to acknowledge notice of the appeal. At no time while imprisoned did defendant seek release. Defendant has known about the State's intent to appeal and filing of an appeal from the date of sentencing.

Defendant also contends that the trial court violated Rule 2:9-3, which allows a defendant to elect to serve a sentence pending appeal because it did not conduct a bail hearing after the sentencing decision pursuant to Rule 2:9-4, which explicitly provides for bail pending appeal. She urges that sentencing judges should be required to advise defendants of the existence of N.J.S.A. 2C:44-1(f)(2) and Rule 2:9-3 after the issuance of a downgraded sentence to ensure that a defendant is granted a mandatory bail hearing after the stay of a downgraded sentence and its expiration. In this case, the argument is not helpful to defendant because she and her attorney were well aware of the pending appeal, which was timely filed by the State. Double jeopardy never attached

because she never had a legitimate expectation of finality in her sentence. <u>See</u> <u>Evers</u>, 368 N.J. Super. at 169.

Defendant also contends that <u>State v. Williams</u>, 203 N.J. Super. 513 (App. Div. 1985), is dispositive of the question. In that case, the State appealed a trial court order precluding resentencing of a defendant following the State's prior appeal of the original sentence. <u>Id.</u> at 515-16. <u>Williams</u> does not detail the notice of appeal served upon the defendant in that case. In this case, however, the State's notice of appeal was served upon trial counsel within the statutory ten-day period.

In any event, in <u>State v. Sanders</u>, 107 N.J. at 609, the Supreme Court abrogated the holding in <u>Williams</u>. The defendants in <u>Sanders</u> were being held in jail prior to sentencing. <u>Id.</u> at 615 n.4. After pronouncing the sentences, the court stated that the defendants would remain incarcerated until the ten-day period for the filing of an appeal expired, and that the defendants should apply for bail once the State appealed. <u>Id.</u> at 615. The State appealed within the ten-day window. We dismissed the State's appeal from the sentence, holding that bail should have been established immediately. <u>Ibid.</u> The Supreme Court reversed. It held that the <u>Rule</u> 2:9-3(c) waiver provisions were inapplicable to the ten-day stay set forth in N.J.S.A. 2C:44-1(f)(2). <u>Id.</u> at 616-17.

A-2828-18T4

Following Sanders, it is improper to admit a defendant to bail until after the State files a notice of appeal challenging a sentence. Id. at 617. The Court said that the "touchstone of the double jeopardy analysis lies in the expectation of finality that a defendant vests in his sentence." Id. at 619. The defendants "could not legitimately have expected that their sentences were final when pronounced," because all are charged with notice of the terms governing the ten-day statutory stay. Id. at 620.

Defendant did not request a bail hearing after being served the notice of appeal. Thus, no legitimate expectation of finality attached. During that time, defendant and her counsel knew that the State sought a sentence increase, yet defendant chose to continue to serve her sentence. The record does not support her contention that she was not given the option of remaining free on bail. State v. Christensen, 270 N.J. Super. 650, 656 (App. Div. 1994) (finding lack of bail hearing inconsequential because defendant "had to have been aware when he retained counsel to represent him on appeal that he would be subject to a custodial sentence if the State prevailed. Consequently, defendant could not have had a legitimate expectation in the finality of his sentence.").

Defendant's reliance on State v. Eigenmann, 280 N.J. Super. 331 (App. Div. 1995), and State v. Thomas, 459 N.J. Super. 426 (App. Div. 2019), is

equally misplaced. (Db30-Db32).  In <u>Eigenmann</u>, the sentencing court found the statute was inapplicable and did not order a stay.  280 N.J. Super. at 336.  On appeal, we found the State had made no effort to "effectuate the stay."  <u>Ibid.</u> Similarly, in <u>Thomas,</u> we held N.J.S.A. 2C:44-1(f)(2)'s automatic stay provisions did not apply.  459 N.J. Super. at 433.  Here, however, the statutory ten-day stay was automatic, defendant and her attorney were advised of the stay, and the State's appeal was filed within the ten-day window.  Thus, the sentence never became final by operation of <u>Rule</u> 2:9-3(c).

Defendant further suggests that because the custodial portion of her term was completed before the January 13, 2017 resentencing hearing, double jeopardy attaches even though she was serving the parole supervision element of her sentence at the time.  Again, defendant had no legitimate expectation of finality.  The same precise sentence was imposed on January 13, 2017, as previously.  The State moved in court for a stay and indicated it was going to appeal while defendant was present.  That she served the custodial portion of her sentence does not per se mean she had a legitimate expectation of finality. In truth, defendant, by her conduct and to some degree her words, waived her double jeopardy protection.

Defendant has now also completed the parole portion of her prior sentence. She argues this is a circumstance which constitutes a material change since Locane II.

The Supreme Court of the United States has rejected the notion of a bright line rule because "the double jeopardy clause does not provide the defendant with the right to know at any specific moment in time what the exact limit of his punishment will turn out to be." DiFrancesco, 449 U.S. at 137. The touchstone is a defendant's legitimate expectation of finality. In this case, defendant never had any reason to expect finality, jeopardy never attached, and thus any resentencing does not implicate double jeopardy even if her parole supervision was complete. She cites to no authority that an expectation of finality is created upon the completion of a sentence while an appeal is ongoing.

Defendant further analogizes her situation to that of the vehicular assault sentence as per our discussion in Locane. That offense was downgraded to a fourth-degree crime, and defendant served the eighteen-month sentence imposed for that crime. Unlike the downgraded homicide conviction, appealable by statute, nothing permitted the State to challenge the concurrency of the vehicular assault conviction, which brought both double jeopardy and mootness concerns into play. In this case, defendant's service of the maximum for a fourth-degree

offense was the greatest sentence that could be imposed for the crime.  Double jeopardy would have certainly barred the imposition of anything other than what she had already completed.  The State has been challenging this downgraded sentence for this homicide since it was first imposed, and defendant has been fully aware of the status of the litigation.  The defendants in Thomas and Eigenmann were in a different position because their situations did not involve the automatic stays imposed by N.J.S.A. 2C:44-1(f)(2) and Rule 2:9-3(c).

In Schubert, a defendant completed a three-year probationary sentence in 2003.  212 N.J. at 300.  In 2008, the trial court corrected the judgment of conviction to include community supervision for life, and the defendant filed a petition for post-conviction relief, asserting double jeopardy.  Id. at 301, 302.

In that case, the Court carefully distinguished Schubert's situation with that of the defendant in State v. Cooke, 345 N.J. Super. 480, 490 (App. Div. 2001).  Id. at 311.  In Cooke, as in Schubert, the court addressed amending a sentence to include a provision for community supervision for life mistakenly omitted when a probationary sentence was imposed.  345 N.J. Super. at 490.  In Cooke, however, the State appealed the sentence immediately.  The issue was thus properly before the court, and it could correct an illegal sentence regardless of the status of the probation because the litigation had been ongoing.  In

contrast, the defendant in <u>Schubert</u> had enjoyed some four or five years during which time he had successfully completed probation and no litigation related to his crime was pending.  212 N.J. at 311.

The Court in <u>Schubert</u>, 212 N.J. at 315, distinguished <u>United States v. Edmonson</u>, 792 F.2d 1492 (9th Cir. 1986), and found that a defendant who had completed his sentence was entitled to the expectation of finality.  In <u>Edmonson</u>, several defendants entered guilty pleas to an offense that had been downgraded to a lesser crime before their sentencing date.  792 F.2d at 1494.  The judge imposed a sentence on the lesser offense, although the greater offense still existed.  <u>Id.</u> at 1495.  Because the judge had done so in the absence of the government's concurrence, the Court held that the sentences could be corrected even though the defendants might have "already served all or part of their void sentences," so long as they received credit.  <u>Id.</u> at 1496-97.  For that reason, the sentences did not implicate double jeopardy.

<u>Schubert</u> explained that the defendants in <u>Edmondson</u> could not have had a legitimate expectation of finality because the issue of the two different statutes with two different sentencing consequences was fully explored and argued at the time of sentence. 212 N.J. at 315.  In contrast with <u>Schubert</u>, Edmondson had no basis to fear further action would be taken against him.

Defendant's situation parallels that of the defendants in Cook and Edmondson, not Schubert. Her sentencing has been either on appeal or pending resentence since the inception. Consistent with the decision in Schubert, double jeopardy never applied.

Defendant also relies upon cases from New York State in support of her position. We disagree as to her conclusions about those cases because we think either no timely appeal was filed or the State did not seek to correct an illegal sentence until well after the sentences had been imposed. More recently, in People v. Cintron, 22 N.Y.3d 757 (2014), although defendant had completed his sentence, "the direct appeal of that sentence [was] not over; it [was] presently before [the court]." Id. at 760. Therefore, the defendant had no legitimate expectation of finality in his sentence. Id. at 761. When the government timely appeals an initial sentence or a sentence imposed at a resentencing, a defendant is put on notice that the sentence may change and he or she cannot acquire a legitimate expectation of finality. Id. at 761. As the court said in Cintron, "[a]ppellate review is a fundamental component of the criminal justice system," and therefore a defendant "cannot have a legitimate expectation of finality in an erroneous sentence that is subject to correction on appeal." Ibid. Thus, even in

the jurisdiction on which defendant relies, the most recent pronouncements support the conclusion we reach today.

Finally, defendant also relies on federal case law, primarily United States v. Silvers, 90 F.3d 95 (4th Cir. 1996). In that case, however, the resentencing was by the district court on a motion. It involved the resentencing proceeding before a trial judge, rather than a statutory appeal, which stays the sentence. Cf. DeWitt v. Ventetoulo, 6 F.3d 32, 34–35 (1st Cir. 1993) (resentencing would violate due process because prosecution attempted to reopen matter "after a final unappealed decision"); United States v. Daddino, 5 F.3d 262, 265 (7th Cir. 1993) (defendant acquired legitimate expectation of finality in sentence upon completing incarceration component because, "when the district court amended Daddino's sentence, the time for either the government or Daddino to commence an appeal had passed"). Thus, Silvers is similar to Velez, and is distinguishable for the same reasons expressed in Cintron.

This vehicular homicide charge has had an entirely different posture from the beginning. Defendant has always known it was subject to a sentencing increase on appeal. See United States v. Arrellano-Rios, 799 F.2d 520, 524 (9th Cir. 1986) ("There can be no expectation of finality in sentences that are illegal

and that were under challenge by the government from the moment the district court judges suggested the sentences they proposed to impose.").

Thus, as we held in Locane II and hold today, defendant waived double jeopardy protection and had no legitimate expectation of finality in the 2013 sentence. Nothing that has occurred in the intervening years has engendered any legitimate expectation of finality in the sentence. Thus, the cross-appeal is denied as lacking in merit.

## II.

The State takes the position that it always has the right to appeal an ultra vires decision, and that in the process of sentencing defendant, this judge disregarded our remand order. "[T]he State's right to appeal in a criminal proceeding is limited." State v. Hyland, 238 N.J. 135, 143 (2019). Pursuant to the court rules, the State may appeal a criminal action "as otherwise provided by law." R. 2:3-1(b)(6). With respect to sentencing, the State may appeal where there is "express statutory authority" to do so, or if the sentence imposed is illegal. Hyland, 238 N.J. at 143 (quoting State v. Roth, 95 N.J. 334, 343 (1984)).

Arguably, the judge's analysis through the prism of the "yin and yang" of sentencing is sentencing outside the structure found in the Criminal Code. Similarly, his disagreement with our assessment of the non-personal factors

turned him into—effectively—a reviewing court reaching new conclusions on our findings.

The judge said he did not believe that he was "bound by the Appellate Division's analysis of aggravating and mitigating factors." Clearly, changes in defendant's personal circumstances warrant divergence—but it is rudimentary that a trial judge is bound by our prior decision. The trial court ignored the prior findings, while seemingly giving them lip service.

With respect to the mitigating factors addressed to defendant's personal circumstances, in State v. Randolph, 210 N.J. 330, 354 (2012), the Supreme Court held that,

> when "reconsideration" of sentence or "resentencing" is ordered after appeal, the trial court should view defendant as he stands before the court on that day unless the remand order specifies a different and more limited resentencing proceeding such as correction of a plainly technical error or a directive to the judge to view the particular sentencing issue from the vantage point of the original sentencing.

The Court held that such an approach "encourages more fulsome resentencing proceedings unless circumscribed by the remanding appellate body's delineation that a limited proceeding is sufficient," and "encourages care on the part of the appellate tribunal to provide greater clarity when remanding." Id. at 352.

In <u>State v. Jaffe</u>, 220 N.J. 114, 124 (2014), the Court held that, at a sentencing hearing following a remand, "the trial court should view a defendant as he or she stands before the court on the day of sentencing." 220 N.J. at 124. "This means evidence of post-offense conduct, rehabilitative or otherwise, must be considered in assessing the applicability of, and weight to be given to, aggravating and mitigating factors." <u>Ibid.</u> Thus, the judge's consideration of new information relating to defendant's personal circumstances was proper. <u>Randolph</u> and <u>Jaffe</u> do not suggest, however, that the resentencing judge is entitled to weigh anew aggravating and mitigating factors that remain immutable between the date of the initial decision and our holdings with regard to them.

We expected the court to engage in such new factfinding as required by changes in defendant's personal circumstances. Nowhere does our opinion, however, invite the Law Division judge to disagree with our decision and interpret the record anew. Certainly in <u>Locane II</u>, we did not expressly limit the scope of the remand resentence—because we anticipated that another judge would follow the dictates of that decision, while taking into account any change in defendant's circumstances.

We cannot discern the meaning of the judge's discussion regarding aggravating factors one and two:

> Aggravating factor one, needless to say, exists and it would -- would have been awar-- -- awarded by me had I been the original sentencing Judge. Great weight.
>
> Mitigating factor two would have been given great weight, the gravity and seriousness of harm inflicted on the victim to avoid double counting is prohibited. See STATE VS. FUENTES, 217 N.J. 57 (2014). The Court has to determine if those -- if there is related conduct in excess of that required to commit the crime as detailed by Judge Alvarez in -- in her opinion in the second STATE VS. LOCANE case. And that existence fades here. And I would have given significant weight to those two factors.

It is unclear if the judge actually gave any weight to those two factors, which we extensively discussed in our prior opinion.

Courts are bound by even dicta of a reviewing court. State v. Dabas, 215 N.J. 114, 136-37 (2013). As we are bound by the mandates of the Supreme Court, the Law Division judge is bound by the mandates found in Locane II as to the aggravating and mitigating factors. Ibid.; Reinauer Realty Corp. v. Borough of Paramus, 34 N.J. 406, 415 (1961). This in addition to the fact we do not understand the weight, if any, he gave to those two considerations in light of his "yin and the yang" analysis.

With regard to aggravating factor three, the judge's discussion of drug court and societal investment in rehabilitation was irrelevant. This particular defendant, who tragically killed another and seriously injured a second person

31

with a blood alcohol reading more than three times the legal limit, is at risk of reoffending. The extent of defendant's intoxication when she drove her car into the victims' vehicle is a factor that does establish that risk—and that individual consideration has nothing whatsoever to do with support, institutional or otherwise, for rehabilitative programs.

"There are two categories of illegal sentences: those that exceed the penalties authorized for a particular offense, and those that are not authorized by law." Hyland, 238 N.J. at 145. Those two categories are "defined narrowly." Ibid. (quoting State v. Murray, 162 N.J. 240, 246 (2000)). "[E]ven sentences that disregard controlling case law or rest on an abuse of discretion by the sentencing court are legal so long as they impose penalties authorized by statute for a particular offense and include a disposition that is authorized by law." Id. at 146. Issues involving the weighing of aggravating and mitigating factors, or the excessiveness or lenience of a sentence, do not relate to the sentence's "legality." State v. Acevedo, 205 N.J. 40, 47 (2011); State v. Flores, 228 N.J. Super. 586, 595-96 (App. Div. 1988).

In contrast, if a sentencing court improperly applies a nondiscretionary factor that requires an objective, per se legal determination, the State could appeal that sentence as illegal under the Criminal Code. Hyland, 238 N.J. at

148. A sentence "not imposed in accordance with law" includes a "disposition [not] authorized by the Code." Murray, 162 N.J. at 247. Additionally, a "sentence based upon a factor which is unrelated to the sentencing criteria set forth in the Code of Criminal Justice" is an illegal sentence. State v. Wilson, 206 N.J. Super. 182, 184 (App. Div. 1985). For instance, "the sentencing court lacks the power to import aggravating factors that are not contained within the Criminal Code's sentencing guidelines." State v. Thomas, 356 N.J. Super. 299, 310 (App. Div. 2002).

Clearly, "[j]udges are supposed to be men [and women] of fortitude, able to thrive in a hearty climate." In re Mathesius, 188 N.J. at 510 n.6. However, that does not mean that a judge can ignore appellate mandates. This judge's findings and mistaken application of the mandated sentencing analysis is unsupportable. See State v. Harris, 181 N.J. 391, 411, 415-16 (2004).

Sentencing is not a mechanical process, but in the interest of uniformity and fairness around the State, regardless of the individual, it is essential that judges strictly adhere to the Code when sentencing defendants. This "yin and yang" sentencing theory is not in the Code, and the revisiting of aggravating and mitigating factors about which an appellate court already made findings based on unchanged and undisputable facts in the record was also improper.

The impropriety of the judge's decision was further highlighted by his use of an example involving a drunken driver who had a record of drunken driving convictions, which he said was an actual case. Even if the judge later acknowledged the case was only a hypothetical, not a real case, the analysis avoids the thrust of the Code. The thrust of the Code is not that, if a person with a poor prior history is sentenced in the high end of the range, imposing a similar sentence to a person without that history would denigrate the impact of the first sentence. The relevant aggravating and mitigating factors, with emphasis on the crime committed drive the sentence—not a comparison of criminal defendants as if they were widgets.

In State v. Liepe, 239 N.J. 359 (2019), a case decided some months after this sentence, the Court discussed the process of sentencing. The discussion warrants repetition as it lays out the concerns we have about what happened here. The Court reiterated the statement in Roth that an error in sentencing "must amount to more than a difference of opinion or individual sentencing philosophy. The sentencing objectives are spelled out in the Code. It is deviation from these objectives, in view of the standards and criteria therein set forth, which constitutes error." Id. at 370-71 (quoting Roth, 95 N.J. at 365).

Our review of a sentence is limited to consideration of the following:

> (1) whether guidelines for sentencing established by the Legislature or by the courts were violated; (2) whether the aggravating and mitigating factors found by the sentencing court were based on competent credible evidence in the record; and (3) whether the sentence was nevertheless "clearly unreasonable so as to shock the judicial conscience."
>
> [Id. at 371 (quoting State v. McGuire, 419 N.J. Super. 88, 158 (App. Div. 2011)).]

The sentencing provisions of the Code are based on "notions of proportionality and desert." Id. at 371 (quoting State v. Carey, 168 N.J. 413, 422 (2001)). Liepe reinstated a sentence of thirty-two years on a defendant who was sixty-two. Id. at 363. The sentence in Liepe was essentially a death sentence. The defendant killed a child, paralyzed another, and seriously injured two other people; his sentence was warranted based on the crime he committed. Id. at 379. Vehicular homicides while driving under the influence are crimes not infrequently committed by those who have no prior criminal history, or even prior driving offenses. As Carey reiterated, courts have never been compelled to demonstrate sentences compared numerically with others imposed by other judges in similar cases. 168 N.J. at 430-31.

Proportionality focuses on the crime. The trial court in that case was found to have properly focused on the case before it—on the devastating impact of the defendant's crimes on society at large, his victims, their families, and their

communities. That he could spend the rest of his life in prison was not the concern—the concern was the imposition of a sentence commensurate to the crimes. See Liepe, 239 N.J. at 379.

In this case, the focus has repeatedly shifted away from the crime defendant committed to her individual characteristics at the expense of imposing a just sentence reflective of her offense and the harm she caused. That she was struggling with addiction did not authorize the court to close its eyes to the harm she inflicted on the victims, the victims' family, and the community. That harm will never dissipate. The loss of a loved one, and serious physical injury to another, can never be compensated.

N.J.S.A. 2C:44-1 lists all the aggravating and mitigating factors that the sentencing court "shall" consider, without singling out any factor for preferential treatment. "[M]ore than a quantitative analysis of the aggravating and mitigating factors is required." State v. Curtis, 195 N.J. Super. 354, 371 (App. Div. 1984). "The factors are not interchangeable on a one-to-one basis." Ibid. (quoting Roth, 95 N.J. at 368). The Code's framework requires sentencing courts to balance the factors to determine whether "a sentence should gravitate toward the upper or lower end of the range." State v. Case, 220 N.J. 49, 64 (2014). "Although no inflexible rule applies, reason suggests that when the

mitigating factors preponderate, sentences will tend toward the lower end of the range, and when the aggravating factors preponderate, sentences will tend toward the higher end of the range." State v. Natale, 184 N.J. 458, 488 (2005).

Thus, it is clear that all aggravating and mitigating factors "shall" be considered as set forth in N.J.S.A. 2C:44-1, and the sole use of a defendant's record, or lack thereof, to set the base term violates the Code. According to the resentencing judge himself, his theory regarding the prominence of a defendant's record derives from advice he received as a young lawyer from a former federal judge. The federal system is quite different from ours. Our system requires a sentence to "reflect primarily the severity of [the] crime." State v. Hodge, 95 N.J. 369, 377 (1984).

The court's mere misstatement of the law does not render the sentence illegal, of course. But in resentencing, the judge clearly relied upon a self-generated alternative framework customized for this defendant. Although he purported to analyze all factors, it is evident from the ultimate sentence that, consistent with his alternative sentencing theory, he based his decision entirely upon defendant's supposedly "unblemished" record.[4] He purported to assign

---

[4] Defendant's record is not unblemished. In Locane II, we noted that the previous sentencing judge erred by failing to consider her prior conditional

great weight to aggravating factors one, two, and nine, yet arrived at the lowest possible sentence. Despite his purported implementation of the factors, the illogical outcome demonstrates that his unauthorized sentencing theory governed his analysis. That the judge applied this "yin and yang" sentencing construct in this case, hopefully, was a single instance of improvisation when faced with what he viewed as a difficult case.

"The central theme of the Code's sentencing reforms is the replacement of the unfettered sentencing discretion of prior law with a structured discretion designed to foster less arbitrary and more equal sentences." Roth, 95 N.J. at 345. "[T]here can be no justice without a predictable degree of uniformity in sentencing." Hodge, 95 N.J. at 379. Under the judge's "yin and yang" theory, even when a defendant does not commit a particularly severe crime, he or she should be sentenced toward the upper end of the statutory range solely based on a prior criminal history. After all, in this case, using this analytical framework, a defendant who committed a particularly severe crime in a particularly cruel fashion, was sentenced to the lowest possible term in the statutory range. The "yin and yang" theory not only finds no basis in the Code, it directly conflicts

---

discharge for marijuana possession. The third sentencing judge made the same mistake.

with the goal of our sentencing laws. It promotes a different sentencing equation leading to decisions untethered from the statutory aggravating and mitigating factors.

Under the Criminal Code, it is not within a judge's discretion to develop an alternative framework that predetermines a sentence based upon one factor. It is not within a judge's discretion to ignore the mandates of an appellate decision in the same case. This judge's new construct meant he advanced defendant's purported lack of a prior criminal history above all other factors, and sentenced defendant in accordance with that philosophy. Thus, the judge did not apply the Code. It was a sentence not issued in conformance with governing law.

III.

We are also troubled by the judge's decision to grant defendant a stay of sentence pending appeal. Pursuant to Rule 2:9-4, a defendant should be admitted to bail only where "the case involves a substantial question that should be determined by the appellate court, that the safety of any person or of the community will not be seriously threatened if the defendant remains on bail, and that there is no significant risk of defendant's flight." Clearly, the judge's determination did not comply with the rule.

This court recently affirmed that, "[w]ether in agreement or not, a trial judge is 'under a peremptory duty to obey in the particular case the mandate of the appellate court precisely as it is written.'" State v. Kosch, 454 N.J. Super. 440, 443–44 (App. Div. 2018) (quoting Flanigan v. McFeely, 20 N.J. 414, 420 (1956)). "[T]he very essence of the appellate function is to direct conforming judicial action." Ibid. (quoting Tomaino v. Burman, 364 N.J. Super. 224, 233 (App. Div. 2003)). Upon remand, a resentencing judge lacks the authority to resentence a defendant without ensuring compliance with conditions set forth in the remand order. Ibid. Curiously, although refusing to reconsider the double jeopardy issue himself, the trial judge relied upon it in order to grant bail pending appeal.

IV.

We turn to mitigating factor six. Restitution by way of insurance payments by third parties or by automobile insurance should not be considered in this case, as it does not serve any rehabilitative purpose. The judge based his finding of that factor, and expressed disagreement with our decision on the issue because insurance companies do not always readily make payments.

Relying on his personal experience, the judge speculated that at times, defendants in accidents such as this are required, under subrogation theories, to

pay toward judgments. But nothing in the record supported the judge's speculation. Furthermore, there is no doubt that this is at its very heart a different type of crime than a theft, for example, where making a victim whole would both serve a rehabilitative purpose and compensate the victim for the financial harm done. <u>State v. DeAngelis</u>, 329 N.J. Super 178, 186 (App. Div. 2000). Payment by insurers does not rehabilitate a defendant. <u>See</u> <u>State v. Martinez</u>, 392 N.J. Super. 307, 318-19 (App. Div. 2007).

Thus, we conclude that the five-year sentence the judge imposed was not the product of analysis pursuant to the Code, or in compliance with appellate directives. It warrants vacation of the sentence and yet another remand. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2828-18T4